THE appellees, having the elder grant for the land ip controversy, recovered judgment therefor, in ejectment, against the appellant, who thereupon filed his bill with injunction, asserting a superior right in equity, derived under two entries, one in the name of l)a. yid Leitch for 30,000 acres, and the other in the name of ¡George Underwood for 7,500 acres. The appellees, in their answer, rely exclusively upon their elder grant, and put the appellant to the proof of these, claims. The bill, on a final hearing, was dismissed, and the appellant has brought the case to this court by an appeal.
The entry in the name of Leitch is not relied on for the appellant in this court, and need not be recited. *272 The entry in the name of Underwood, upon which the controversy turns, was made the 26th of March 1784, and calls for “beginning at the modt north.west, wardly corntif of an entry of James Moodyq of 31,000 acres, made on the waters of said South Fork of Lick, ing, and running with the line of said M(tody’s entry ii southwardly course. 1,500 poles ; thence northwardly at right angles, so far as will include the quantity.”
Moody’s entry, upon which Underwood’s depends, was made the 22d of March 1784, “ beginning at the Mouth of the second cffeek that runs into the South Fork of Licking, on the west side, below where Bird’s road crosses said fork first below Mill creek, (for the better description of this creek, John Keiser lay in camp with his family, last winter, about half a mile below the mouth of said creek, on the river bank;) thence from the mouth of said creek up the meanders of the river, so far as one mile, when reduced to a straight line; and from said begiriningdown the meanders of said river five miles, when reduced to a straight line; thence from each end of the above mentioned line of six miles, westwardiy, at right angle#, so far as will include the quantity.”
The South Fork of Licking and Bird’s road are indisputably proved to have been generally known at the date of Moody’s entry, and a place is delineated on the connected plat as the one where Bird’s road crossed the South Fork of Licking, which is also proved to have been well known. Below that place, two creeks are shown which run into the river on the west side, the lower of which is claimed by the appellant as the beginning of Moody’s entry; and it must, no doubt, be taken to be the true point of beginning, if-the place where Bird’s road crossed the river, as delineated on the connected plat, is the one intended to be described by the locator, it is contended, on the part of the ap.pellees, that it is not; because it is not shown to be the first place where Bird’s road crossed the river below Mill creek, as described in the entry. Mill creek is mot represented bn the connected plat ; and although the witnesses speak of the crossing of Bird’s roadj as delineated on the plat, as tiie first below Mill creek, yet they say tliat Mill creek was not known to' them, at the date of the entry, by that name. Mill creek must, therefore, be taken not In have existed, or *273 at. least not to have been generally known by that naipe. at the date of the entry. But we must álso as. - siupe the fact to be, that there was no other place where Bird’s road crossed the South Fork of Lick, ing, except that which is shown and claimed by the appellant; for there is no other delineated on the plat, and none other is spoken of by the witnesses ; and, in fact, they speak of that as the crossing of Bird’s road, aqd thus seem to imply that there was no other. Upon this assumption we cannot suppose that ttie description in the entry, of the place where Bird’s road cross, ed the river, with reference to Mill creek, can vitiate the entry; for as Bird’s crossing was an object of great notoriety, it needed no additional description; and that which is given of it in reference to Mill creek, could not, we apprehend, beguile or mislead a subsequent locator, and mav be regarded as supererroga. tion. The further description given of the creek, at the mouth of which the entry in question was to begin, i?, we also think, entitled to some weight. The place where Keizer lay encamped the preceding winter, is very , clearly identified, and is about the distance described below the mouth of the creek claimed by the ¿ppeliant as the one intended by the entry. The en. camp merit, does not indeed, appear to have acquired! any degree of notoriety, but it is proved to have been ra,tlrer of a remarkable character ; and some of the witnesses, who had explored the South Fork of Licking from its mouth to the place where Bird’s road crossed it, swear, that there was no other encampment of the kind on the west side of the river, tt was n.aturally, therefore, calculated to attract attention, and although it was not notorious as Keizer’s, and may have'had no intrinsic evidence of its being his encampment, yet those who saw it would readily conclude that it was the one intended by the entry, as there was no other of the kind, to which the entry could have re. iqrred.
Moody’s entry, therefore, must, we think, be deemed valid ; and, of course, that of Underwood, depend, ing. upon it, must be equally so.
As to the mode of surveying thosé entries, there is [¶] room for a difference of opinion, and any directions upop that subject we conceive unnecessary. To so much of the land in controversy as is included in the' *274 pátent to Underwood, and has been conveyed to the appellant, and which will be included in a survey when accurately made upon Underwood’s entry, the appel. lant has sho\vn a súperíor equity, and is entitled to a ¡decree therefor.
The decree of the circuit court must be reyersed with costs, and the cause be remanded, that a decree iriay be entered for the complainant in that court, in conformity to this opinion, and such orders, &c. to be made as may be nécessáry to effectuate the samé¿