Judge Marshall
delivered the Opinion of the Court.
In 1826, James Shropshire died, after having made and published his will, in which, after various bequests, he directs his property to be kept together on his farm, under the management of his executors, until his youngest child becomes of age, then to be sold, and the proceeds divided among his children, and the two children of his daughter Julia Sims; but none to receive any thing until the others are made equal; and then says, " Julia Sims’ two children to receive no more until their " father, William M. Sims, pays one hundred and fifty " dollars, for which I am security for him, to Lewis " Reno,” &c.
In 1836, ten years after the death of James Shropshire, Reno filed this bill, in which he alleges that, some time in the year-, William M. Sims and James Shropshire became indebted to him, for one hundred and fifty dollars loaned to Sims, on their joint credit, and at their joint request, and for which both were bound; that Shropshire made his will as above stated ; that three hundred and twenty five acres of his land had lately been sold under a decree, by James P. Shropshire, as commissioner; that Sims had never paid the one hundred and fifty dollars, but the whole remained unpaid; and being, as he says, remediless at law, he prays that he may be substituted in the room of the two children of Sims, as to the sum of one hundred and fifty dollars, with interest, and that James P. Shropshire may pay the same to him, out of the proceeds of the land.
The executors of James Shropshire, of whom James P. Shropshire is one, the purchasers of the land, and William M, Sims, are made defendants in the original *584 bill, and, by an amendment subsequently filed, the two children of Sims, who are infants, are also made defendants.
Infant defendants must be summoned; the appointment of a guardian ad litem, and answer by him, is an irregular proceeding, & does not make them parties.
If the necessary parties were not before the Court when a decree was rendered, there must be a reversal, and return of the cause: but if the facts, as they appear in the pleadings, are not such as to entitle the compl’t to any relief, the mandate will be—not to allow further preparation — but to dismiss the bill.
There was no service of process upon the infants ; but a guardian ad litem, was appointed, who answered for them. William M. Sims and James P. Shropshire also answered — all denying, in effect, the existence of any debt ; and Shropshire and the infant defendants, relying upon the statute of limitations, and the statute of frauds and perjuries, so far as regarded the alleged liability of the testator.
On the hearing, it was decreed that J. P. Shropshire pay to the complainant one hundred and fifty dollars, and that the parties respectively pay their own costs. J. P. Shropshire prosecutes a writ of error to reverse the decree.
The failure to have process executed upon the infant defendants was not cured by the appointment and answer of a guardian ad litem. Such an appointment was itself irregular, and did not bring the infants before the Court, nor authorize a decree affecting their interest—as has been repeatedly decided by this Court. And as it is obvious that their interest was affected by this decree, and that they were necessary parties to the suit, it was erroneous to decree when they were not before the Court. And for this error, if there were no other, the decree must be reversed.
It is contended, however, that, on reversing the decree for this error, the cause should not be remanded for further proceedings, but that the bill should be directed to be dismissed, because it contains no equity.
In reversing decrees for want of proper parties, this Court has never remanded the cause for further preparation, if it appear, upon the complainant’s own showing, that he has no grounds for claiming the aid of a court of equity, and that, if his bill were taken as true, he would be entitled to no relief: unless it may be in those cases in which the defective statements of the bill might be aided by the answer, and ail answer has been filed from which it appears that the complainant is entitled to relief. A contrary practice would be absurd. *585 If the complainant has no equity, he has no right to bring any party into the Court. And it would be worse than useless to direct the bill to be retained that he may have an opportunity of bringing parties before the Court, when, upon the appearance of all the parties, the bill must be dismissed. Massie &c. vs. Anderson, 2 Litt. 271, &c.
A testator, after various bequests, directed that the residue of his estate should ultimately be sold, and the proceeds divided among his children and certain grand - children—the latter to receive no more until their father pays $150 for which the testator was surety for him to L. R. Held, that this is not a provision for the benefit of the creditor, intended to make the estate liable for a debt for which it would not be liable with out the provision; but only a direction that, in case the payment does devolve upon the estate, it shall be paid out of the devise to those grand-children, without diminishing the other legacies; & that it furnishes no ground for rendering the testator's estate liable in the first instance, (he being only a surety;) or for coming into equity to enforce the demand-when there appears to be a legal remedy.
In this case the bill is not helped by any answer, nor is it to be presumed that it will be, as the defendants who have answered resist the relief sought for, and set up a bar against it.
The principle on which the bill and the decree seem to be based, is, that the testator, Shropshire, is supposed to have pointed out, or set apart by his will, a certain fund for the payment of this debt; and that, as the creditor cannot reach that specific fund, except by suit in equity, therefore he might come into that Court, in the first instance, and obtain a direct decree for its appropriation to his debt. Conceding—what it is not necessary to discuss or decide—that the true effect of the will is to make the designation supposed, there is no ground for presuming that this designation was intended for the benefit of the creditor. On the contrary, the plain inference is, that the testator merely intended that, if this debt should fall upon his estate, it should not diminish the shares of any others of his devisees, except the children of Sims, who “was the real debtor. The testator clearly did not intend to make his estate more directly responsible to the creditor than it was before, nor to put any portion of it between the creditor and the principal debtor, but merely to place one portion of it between the creditor and the residue. It is, in effect, nothing more, on the construction assumed, than a direction or authority given to the executor, that, if he should have to pay this debt, it must be paid out of the portion devised to the children of Sims, and not out of the estate at large.
It is impossible to conceive how such a provision could be of any advantage to the creditor, either at law *586 or in chancery. If the whole estate, that is, if the executor, is liable for the debt, certainly it is of no consequence to the creditor out of what portion of it the debt is paid; and if a part is sufficient, certainly the whole must be. On the other hand, if the whole estate is not liable, as between the executor and the creditor, it was not the intention of the testator to make any part liable. In either view, we are clearly of opinion, that the mere existence of this provision in the will of the surety, does not of itself furnish any ground for rendering the whole or any part of his estate liable in the first instance, or for coming into chancery to ascertain and enforce a purely legal demand, as this is, against either the principal, or the representatives of the surety, or both. Nor do we perceive any principle on which the death of the surety should be deemed a proper or sufficient reason for changing the forum.
Equity dictates that the principal shall pay the debt; he has no right to contribution from the estate of the surety; and, in the absence of any allegation, that there is a necessity, resulting from the condition of the principal, for resorting to the security, equity will not take jurisdiction of the case, merely to enable the creditor to coerce payment out of the estate of the surety, tho’ the legal remedy as to him may be lost by his death.
The legal remedy, it is true, is confined to the principal debtor, in consequence of the death of his surety; but there is no suggestion that its efficacy is rendered in any degree doubtful by this circumstance. And as equity dictates that the debt should be paid by the real debtor, who, it may be assumed, is amply able to pay it, and who would be entitled to no contribution from the surety, it seems to us that the court of equity cannot consistently assume jurisdiction, for the mere purpose of enabling the creditor to coerce the debt from the estate of the surety, when there is no apparent necessity for so doing. Whether the legal remedy against the principal should be exhausted before the Chancellor will give his aid to enforce the debt against the estate of the surety, need not be decided. The bill does not even allege a difficulty in enforcing payment from the principal, if the demand be valid. And we are satisfied that, in such a state of case, there is no equitable ground for bringing the demand into chancery. And therefore we are of opinion, that there is no reason for directing that the bill shall be retained for further preparation as to parties.
There are several obvious errors in the decree, and several objections to the bill, which, as they do not af *587 fect the disposition to be made of the cause, it is deemed unnecessary to notice.
For the reasons already stated, the decree is reversed, and the cause remanded, with directions to dismiss the complainant’s bill, without prejudice.