HENDRICKS, Appellant, vs. McLEAN, Respondent.

1. Under the act regulating chancery practice, (R. C. 1845,) an order appointing a guardian *ad litem* for minor defendants who have not been served with process, is erroneous.
.2. Under that act, it is no objection to a decree otherwise regular that it does not give infant defendants a day to show cause after coming of age.

### *Appeal from Franklin Circuit Court.*

*M. Frissell*, for appellant. 1. The court could take no jurisdiction to the prejudice of the infant defendants, until they had been served with process. A guardian *ad litem* can only be appointed for a party in court. 2. No decree could be rendered upon the confession of the guardian *ad litem* without proof of the allegations of the bill. 3. The infant is entitled to a day to be heard in court.

*Charles Jones*, for respondent. It is not material whether process was served upon the infant defendants or not, as the court appointed a guardian *ad litem*, who appeared and filed an answer for them.

RYLAND, Judge, delivered the opinion of the court.

This was a motion made in the Franklin Circuit Court, to set aside a decree heretofore made by that court in the case of Elijah McLean *vs.* William Hendricks, Bernard J. Hendricks, John J. Hendricks, Mary Jane Hendricks, and Sophronia Ann Hendricks.

The motion is as follows, after naming the case as above:

" Mary Jane Hendricks, by her attorney and in behalf of her brothers, Bernard J. Hendricks, John J. Hendricks, and her sister, all of whom are minors except herself, moves the court to set aside the decree in this cause for the following reasons : first, the infant defendants, in that cause, were not before the court, no process having been served upon them and they having no guardian ; second, said infants appear by solicitor ; third, there is no time given, by the decree, for the infants to come in and show cause for setting aside the decree.

On the trial of this motion, the original bill of McLean *vs.* Hendricks and others, together with the summons and return of the sheriff thereon, with various entries upon the record, and the answer of the guardian *ad litem*, were given in evidence by the said Mary Jane Hendricks.

The defendant offered in evidence the record and proceedings of a suit for partition, by Bernard Hendricks and others against Jacob Feeze.

The bill of complaint, filed by Elijah McLean originally, upon which the decree was made, on which the motion in this case was designed to operate, represented, that some ten or twelve years before the filing of the bill, one William Hendricks, of the county of Franklin, wishing to enter certain lands situated in said county, and not having the money, applied to one Ridenhour for a loan of the necessary amount. Finding that he could borrow the amount by giving security for the payment of the same, he executed his note, with one John Jones, as security, for the sum of one hundred dollars. With this money and with other money kept back from his creditors, he entered the lands. The bill charges, that he determined to defraud his security, Jones, and to defraud the complainant, McLean, to whom he was indebted about $70 ; that the entry was made in the name of his son, William James Hendricks, then a minor ; that this was done to defraud his creditors ; that said William J. Hendricks had no knowledge of the entry of these lands in his name, or that the same was designed to be entered in his name at the time ; that the same was designed to

be for his son, (William's) use and benefit, that he might fraud-
ulently avoid the payment of his debts and still use the prop-
erty purchased in his son's name ; that the lands so purchased
in the name of his son, and for the purpose and design afore-
said, were as follows : south-west quarter of the south-west
quarter of section number four, township forty-two of range
one, west, containing forty acres ; also, south-east quarter of
south-east quarter of section number five, township forty-two
of range one, west, containing forty acres ; and caused the
certificates to be issued in the name of his son. The bill also
charges, that William J. Hendricks, at the same time, entered
other lands in his own name, containing eighty acres, and
caused certificates to issue in his own name ; that Hendricks
did, for the purpose of defrauding and cheating his creditors,
transfer, by deed, about the same time, to his son, William
James, the aforesaid lands, entered in his name. This deed
was dated some time in the year 1841, and was for the consid-
eration of natural love and affection. The bill charges, that
this deed was made solely to defraud the complainant and other
creditors ; that the said William James had no notice of this
deed ; that it was made to keep the land, in his name, out of
the reach of legal process of his grantor's creditors. The bill
charges, that said Hendricks, anterior to this time, and at that
time, and for many years, had been largely in debt, to the
amount of several hundred dollars, exclusive of the amount
due to Ridenhour and to the complainant in the bill ; that Hen-
dricks refused to pay the note on which Jones was security to
Ridenhour ; that Jones had it to pay ; that Jones sued Hen-
dricks on this note and recovered judgment for the one hundred
dollars debt, and nine dollars and ninety cents damages ; that
the execution, issued on this judgment, was returned unsatis-
fied, for want of goods and chattels ; that a transcript of the
judgment was filed in the clerk's office of Franklin Circuit
Court ; that execution issued upon this transcript, dated about
the 20th February, 1846 ; that it was levied on the lands
which had been conveyed, by deed, to William James Hen-

dricks ; that the lands were sold and Jones became the purchaser for one hundred and five dollars ; that the sheriff made a deed to said Jones for the said lands, dated April 9, 1846 ; that an alias execution issued, and that said lands, with the other portions that had been entered in the name of William James Hendricks, were levied on, and that the sheriff was about to sell the same ; that, at this time, said Hendricks came to the complainant and represented, that his home, farm and land were all about to be sacrificed, and that if the complainant would release his property from the claim of Jones, he, Hendricks, would make him a good warranty deed for the entire one hundred and sixty acres, in payment of what he then owed the complainant, which was about two hundred dollars. The bill also charges, that McLean, the complainant, being entirely ignorant of the fact that one half of the land had been entered in the name of William James Hendricks, and deceived by the fraudulent representations of said defendant, agreed to his proposal and paid the debt of the said Jones, amounting to near two hundred dollars, and costs, and took from Jones his quit claim deed for the eighty acres which the sheriff had previously sold to him ; that said Hendricks made to complainant his deed for the one hundred and sixty acres, as he had proposed, for the consideration of what he paid to Jones for the defendant, together with what defendant was owing him, making about three hundred dollars ; that the complainant now having Jones' title and defendant's title, and believing the same to be good, sold the land to one Jacob Feeze, for a valuable consideration, and made a general warranty deed for the same ; that some time subsequent to this sale, Feeze informed the complainant that the children of said Hendricks, minors, by their next friend, who was their father, had instituted in the Franklin Circuit Court a suit for partition of the aforesaid lands, against him, said Feeze, they claiming as heirs of their said brother, William James Hendricks, deceased. The bill charges, that now, for the first time, the complainant learned that any other person claimed title to any of

the said lands, and desiring that said Feeze should not be har-
rassed, he purchased the said lands · back from Feeze, and
Feeze reconveyed the same to the complainant ; that William
J. Hendricks died some time in the year 1846 ; that there was
no administration of his estate, nor was he known to have any
until said William Hendricks, the father, wishing to consum-
mate the fraud upon your orator, brought the suit for parti-
tion, as next friend for his children.   The bill charges, that
the entry of the eighty acres in the name of William J.
Hendricks was fraudulent, with design to cheat, hinder and
delay the creditors ; that the deed to William J., from his
father, was also fraudulent, being for the same purpose ; that
the pretended claim of his children, the minors aforesaid, to
wit : Bernard J. Hendricks, John J. Hendricks, Mary J. Hen-
dricks and Sophronia A. Hendricks, was fraudulent—makes
these minors parties with their father ; that the claim set up is
without·their knowledge and is solely the act of said William
Hendricks, and is a false and fraudulent transaction.   The bill
prays for a decree vesting title in complainant, and for general
relief.

Summons issued on this bill against the defendants, William,
Bernard J., John J., Mary J. and Sophronia A. Hendricks.
This writ was served as follows : " Executed the within on the
second day of March, 1849, by reading. the plaintiff's bill of
complaint and summons to the same attached, to and in the
hearing of the said William Hendricks, on the above day ; also,
by delivering him on the same day a true copy of the plain-
tiff's bill of complaint.     A. W. JEFFRIES, Sheriff,

By J. W. GREENSTREET, Dept."

On the 2d of April, 1849, the answer of the guardian *ad
litem* was filed for the infants.   The answer is as follows :
"'This defendant cannot deny the facts and allegations in said
complainant's bill of complaint contained."

The record shows, that John D. Stevenson was appointed
guardian *ad litem* for Bernard, John J., and Sophronia A.
Hendricks on the 2d April, 1849.

On the 5th of April, 1849, the parties appeared by solicitors and the cause was tried. The court found that the entry in the name of William James Hendricks was fraudulent, and found that the deed of conveyance from William, the father, to William James, the son, was fraudulent ; that said entry and deed conveyed no title to said William James, and decreed that said title be vested in complainant, and that complainant recover costs. The petition of the minors, heirs of their brother, William James, for partition against Feeze, sets up their claim to the lands, but it has nothing to do with the motion before the court. Upon hearing the evidence, the court overruled the motion to set aside the decree, and the case is brought here by appeal.

1. The record shows that the infant defendants, named in McLean's bill, were not served with the process of the court. The return of the sheriff is silent as to them. He shows service on William Hendricks, but says not a word as to the other defendants. They were not served. The order of the court, then, appointing Stevenson guardian *ad litem*, was erroneous. These defendants were not before the court ; they were not summoned to appear, nor does the record any where show that they were in court or moved for the appointment of a guardian *ad litem*. The court, then, had no authority, upon the answer of the guardian *ad litem*, thus appointed, even confessing the facts alleged in the bill of complaint, to make a decree against these defendants, minors as they were. In *Shropshire* v. *Reno*, 5 Dana, 584, the court of appeals of Kentucky decided that, where there was no service of process on the infants, but a guardian *ad litem* was appointed and answered for them, that such appointment of a guardian did not cure the failure to have process executed on the infants ; that the appointment, itself, was irregular and did not bring the infants before the court ; that where it is obvious that the interest of the infants is affected by the decree, and they are necessary parties to the suit, a decree, when they were not before the court, would be erroneous. No decree can be made

against infants upon the admissions of their guardian *ad litem.*
4. Paige, 115. In *Jones' Ex'r* v. *McGinty and wife*, 3
Dana, 426, "A guardian *ad litem* was appointed and had put
in an answer for the infant heirs of Garrard Jones, deceased,
when no process seems to have been executed upon them. The
order appointing him, as well as the answer put in by him, was
irregular and erroneous, until after they were served with pro-
cess." All the defendants must be served with process under
our statute regulating practice in chancery, when this bill of
McLean's was filed. The court had no authority, without the
service of process or the appearance before the court of the
infants, to make an order appointing a guardian *ad litem* for
the infant defendants. In *Day* v. *Kerr*, 7 Mo. Rep. 426,
Judge Tompkins, in delivering the opinion of the court, said :
"However idle it may be for an officer to read a summons in
chancery to an infant, it is conceded that it was his duty to
serve the process as the law prescribed, otherwise there could
be no ground on which the court could issue further process,
to bring them in." In the same case, the judge remarked :
"But certain it is, they, the infants, were present in court,
and when they were in the *presence* of the court, it was in the
power of the court, if they were above the age of fourteen
years, to admit them to choose a guardian." In this case, the
decree was held not to be void. In *Heath's Adm'r* v. *Ash-
ley's Adm'r and others*, 15 Mo. 395, this court held, that a
decree in a chancery cause, against an infant, for want of an-
swer, and without proof of the statements in the bill, is alto-
gether erroneous. The decree, then, in this case of McLean
*vs.* Wm. Hendricks and others, is erroneous, and the motion
made by the said Mary J. Hendricks, for herself and her in-
fant brothers and sister, should have been sustained. 4 Dana,
136. 3 Dana, 405.

2. As to the point alleged as error, in said decree, not giv-
ing day to the said defendants, after they became of age, to
appear and show cause against the decree, this court is of
opinion that that is not error. That it is a rule generally pre-

vailing in the courts of chancery in England, is fully admitted. It has been adopted as a rule, too, in some of the American courts of very high authority. *Mills* v. *Dennis*, 3 Johns. Ch. Rep. 367 ; *Bushnell* v. *Harford*, 4 Johns. Ch. Rep. 302 ; *Pope* v. *LeMaster*, 5 Littell, 77 ; *Beeler* v. *Bullett*, 4 Bibb, 11 ; *Drayton* v. *Drayton*, 1 Dessaus. 125 ; *Wilkinson* v. *Wilkinson*, 1 Dessaus. 201 ; *Whitney* v. *Stearns and others*, 11 Metcalf, 319. In *Ruby and others* v. *Strother*, 11 Mo. Rep. 422, it was said, that, by the English courts of chancery, the right of the infant *to a day*, after his coming of age, to show cause against a decree, was clearly admitted ; that an examination of the authorities, ancient and modern, will leave no doubt of this right ; and it has been recognized in many of the American courts. This point was not decided by the court, as the case did not properly present this and others which were remarked upon the court. The court observed : " We are of opinion, that this cause is not before us in a shape in which the points made can be decided. The procedure adopted by the appellants is not an appropriate one."

The doctrine of giving a day to the infant, to show cause, is thus treated of in Daniel's Chancery Practice, 1 vol. 222, sec. 7 : " Another ground of error, for which a decree against an infant may be impeached, is, that it does not give the infant a day after he comes of age, to show cause against it, in cases where he is entitled to such indulgence. This arises from the practice which was formerly adopted in courts of equity, from analogy to the rule of law, by which, where an infant was sued on the specialty of his ancestor, he might plead that he was an infant, and that he ought not to answer until he was of age, upon which the parol demurred ; that is, all further proceeding was stayed till the infant attained twenty-one. In imitation of this rule, courts of equity held that, in case of lands in fee, descending upon an infant, the parol should demur in equity as well as at law, and that, whether the estate was equitable or legal. From analogy to this rule, by which the parol was made to demur, wherever the real estates of an

infant were sought to be subjected to the debt of his ancestor, the courts of equity adopted another rule, by which it was rendered necessary that, in all cases in which the real estates of an infant were to be sold or conveyed, under a decree of the court, *and it was requisite, in order to complete the title to such estate, that the conveyance should be executed by the infant,* the execution of such conveyance should be deferred till after the infant should have had an opportunity, after attaining twenty-one, to show cause against the decree. For this purpose, a provision was inserted in the decree, giving the infant a day to show cause against it, within a certain time after he came of age. The words of the decree, in such cases, were as follows : " And this decree is to be binding on the infant, unless, being served with process for that purpose, he shall, within six months after he shall have attained his age of twenty-one years, show unto this court, good cause to the contrary."

The insertion of this clause, in a decree for a conveyance, by an infant, of his estate, was so strictly insisted upon, in all cases, that the omission of it has been considered an error in the decree.

In *Eyre* v. *The Countess of Shaftesbury*, 2 P. Wm's, 102, ii is said that, in all decrees against infants, even in the plainest cases, a day must be given them to show cause, when they come of age. But in the case of *Sheffield* v. *The Duchess of Buckingham*, West's Rep. 682, Lord Hardwicke said, "Bills of review are of two kinds : the one in the nature of a writ of error *coram vobis*, for error apparent on the face of the decree, and this is, of course, on making a deposit of £50. The other, which is now an established proceeding, though not of course, but discretionary, and is upon matter which, though existing before the decree, yet came to the parties' knowledge since, and this is on petition and affidavit, that it did so, and must appear to be such matter as will overturn the decree, or make it doubtful."

This kind of proceeding was first in Lord Bacon's time, and

was disputed so late as in Lord Harcourt's, and is taken from the courts of the civil law.

The present application is for a bill of this last kind. For the first, there is no occasion for an application to the court. Let us consider, then, the grounds of it.

As to the first, " that no day is given. " This, if it is error, is error on the face of the record, and, therefore, may be taken advantage of without such a bill of review as this is. And it is a new doctrine to me, on a bill to have the trusts of the will only performed, to have a day given, when the infant is plaintiff and the decree is according to 'the prayer of the bill. The case of *Lady Effingham* and *Sir J. Napier*, in the house of lords, is the only case, and the reason the lords went on there was, that it was for relief on a kind of fraud, and it was to convey the infant's estate. It was, therefore, a very particular case and not to be argued from.

And let this decree be founded on which bill it will, no conveyance of the real estate is directed, and I take it to be the course of the court not to give day unless a conveyance is directed, either in form or substance. This doctrine had been declared nearly forty years before the case of *Sheffield* v. *The Duchess of Buckingham*, and in the case of *Cooke* v. *Parsons*, 2 Vernon, 429. In *Cooke* v. *Parsons*, which was on a bill of review, an error assigned was, that lands were decreed to be sold pursuant to the will, for payment of debts, without giving the heir a day to show cause, after he came of age. The Lord Keeper confirmed the decree, " for the lands being devised to be sold for payment of debts, there is nothing descends to the heir, and an immediate sale may be decreed without giving him a day to show cause, though an infant ; but if he had been decreed to have joined in the conveyance, then he must have had a day after he came of age."

In the case of *Blatch & Agnis* v. *Wilder and others*, 1 Atkyns, 419, decided by Lord Hardwicke, a short time before the case of *Sheffield* v. *Buckingham*, it was agreed that, where lands are devised to trustees, to be sold for the payment

of debts, and the heir at law·is an infant, he has no day given him, to show cause, on his coming of age; otherwise, where there is no devise of lands expressly to any particular person, for in that case he has.

Daniel, in his chancery practice, says, there is one case in which the rule laid down by Lord Hardwicke, in *Sheffield* v. *Duchess of Buckingham*, is subject to exception, namely, that of foreclosure against an infant. In that case, although no conveyance is required from the infant, either in form or substance, he will be allowed six months after he comes of age, to show cause against the decree; but in such a case, he can only show cause against the decree, for error in it. He may not unravel the account, nor is he so much as entitled to redeem the mortgage by paying what is due.

In *Booth* v. *Rich*, 1 Vernon, 295, the court said, there being an infant in the case, we cannot foreclose him, without a day to show cause, after he comes of age; but the proper way is, to decree the lands to be sold to pay the debts, as that will bind the infant.

In the case of *Price* v. *Carver*, 14 Eng. Ch. Rep. 2 part, 162, decided August, 1837, the lord chancellor said: "The question in this case was, whether the infant defendants were to have a day to show cause, after attaining twenty-one. The decree, in the event of the mortgage not being redeemed, after directing a foreclosure, directs a surrender or conveyance of the legal estate to the plaintiff.

"I proceed to consider the only question argued before me, namely, whether, supposing the decree to be in other respects correct, the infant defendants ought to have a day to show cause after attaining twenty-one. That they would have had a day to show cause, according to the course hitherto pursued, is quite clear, the decree being both to foreclose *and to procure a conveyance from the infants*. But it is said that the statute of 11 Geo. 4, and 1 W. 4, chap. 47, sec. 10, has altered the course of proceeding. That statute only enacts, that the parol shall not, in future, demur. If the parol demur-

ring and giving a day to an infant be synonymous terms, then this statute has prohibited the giving a day in future ; but if the terms be not synonymous, then the statute does not affect the practice in question in this case.   I have always considered, that the parol demurred, in equity, in those cases only in which it would have demurred at law.   The origin and limits of this course at law are well explained in *Plasket* v. *Beeby*, 4 East. 485 ; and the cases there put, of the parol demurring, have no reference to the cases in equity, in which a day is given to an infant to show cause ; indeed, the shape of the decree, in the two cases, is perfectly different.   When the parol demurs in equity, nothing is done to affect the infant ; but, when a day is given, the decree is complete ; but the infant has a day given to show cause against it, and if he do not show good cause, within the time specified, he is bound.   In some cases, indeed, the distinction is most apparent, the court deciding that the parol did not demur, and therefore making the decree, but giving the infant a day to show cause.   In *Uvedale* v. *Uvedale*, 3 Atkyns, 117, Lord Hardwicke puts a case in which the parol could not have demurred, but the infant would have a day given.   In *Chaplin* v. *Chaplin*, 3 P. Williams, 368, it was held, that the parol did not demur ; but the legal estate being in the son, could not have been got from him until twenty-one, and the decree must have given him a day to show cause.''   After citing many other cases, the lord chancellor said : '' All cases of foreclosure and partition, and all others in which a conveyance is required from an heir, except those in which the parol would demur at law, are cases in which a day is given, but the parol does not demur.   Of all such cases, the statute takes no notice, and affords no remedy for them, except that by the eleventh section it enables the court to take from the infant the legal estate of property decreed to be sold for the payment of debts, but for that purpose only.   In all other cases in which a conveyance is required from an infant, the law remains as before, and the practice, therefore, must remain the same.

There must be a decree for the infant to convey at twenty-one, and he must have a day."

Chancellor Kent had before him the principal questions which were afterwards decided by the lord chancellor in the above case of *Price* v. *Carver*, in the case of *Mills* v. *Dennis*. This case of *Mills* v. *Dennis* was decided in 1818. In it the chancellor said : " It was the ancient and has been the settled practice of the court that no decree should be made against an infant without giving him a day (which was usually six months) after he comes of age, to show cause against it, and he is to be served with process of subpœna, for that purpose, on his coming of age. But though, in the case of a foreclosure of a mortgage, the infant has six months to show cause, yet, he cannot then be permitted to unravel the accounts, nor will he be entitled to redeem the mortgage by paying what is reported due. He is only entitled to show error in the decree. If, however, instead of foreclosing the mortgage against the infant heir of the mortgagor, and thereby giving him a day after he becomes of age, it be decreed that the lands be sold to pay the mortgage debt, then, it seems to be understood that the sale will bind the infant." The chancellor, after directing that the plaintiff must prove his debt before the master, and that the master report the proof, the amount of principal and interest due, &c., concludes : " Every sale so decreed, will be absolute, without any day to show cause."

In the case of *Wilkinson's Adm'r* v. *Oliver's Representatives*, 4 Henning & Munford, 450, the question submitted to the court was, whether the decree, which was for the sale of some lands belonging to infants, to pay debts, should allow to them any time after they came of age, to show cause against it, as commissioners were to conduct it. By. the chancellor : Wherever an infant is decreed *to do an act*, he must have six months, after full age, allowed him to show cause against the decree, as where he is foreclosed. But, where lands are decreed to be sold for the payment of debts, there is no necessity

to allow a day, unless he is decreed to join in the conveyance, as the commissioners of sale will execute the deed.

From all the cases which I have had the opportunity of examining on this subject, I think the following principles may be justly set down as deductions : That no day is given where the decree directs the sale of land to be made for payment of debts, and the conveyance is not to be made by the infant. Where he is required to unite in the conveyance, or to make the conveyance, time is given him to show cause against the decree, after his maturity. These cases satisfy me that, under our system of practice, no day is necessary to be given to the infant. Here, by our statute, the decree itself passes title ; no act is required to be done by the infant. The statute is general and makes no exceptions in favor of infants. They have two years allowed after final decree, for appealing. "In all cases where the court may decree the conveyance of real estate or the delivery of personal property, it may, by decree, pass the title of such property, without any act to be done on the part of the defendants, when, in its judgment, it shall be proper." R. C. 1845, p. 852. "No representatives of a deceased party or other person interesled in the cause of action, shall be bound by any order or decree in any cause to which they do not become and are not made parties." R. C. 1845, p. 850. This section shows, that such decree will be binding upon all such as were made parties. No bill of review is allowed after five years from rendition of final decree. "No sale or conveyance upon a bill for foreclosure or satisfaction of a mortgage regularly made by a court of chancery, shall be affected or prejudiced by the setting aside of any decree on the appearance of a defendant, as provided in the statute." R. C. 1845, p. 852.

No exception is found in our statute regulating the practice of courts of chancery in regard to infants. Here the courts decree against them as other defendants, only requiring that they be served with process and make proper appearance by

guardian, which, on motion, the court will appoint for any infant defendant served with process.

The day was never given in the English courts of chancery, where the decree affected only the personalty. It was where the real estate of the infant defendant was affected by the decree, and not in all cases of this kind, but where, in the language of Lord Hardwicke, "a conveyance was not directed, either in form or substance, except foreclosure of mortgage. Now, in England, wherever the courts take from the infant the legal estate of property, by decree, for payment of debts, no day is given.

Upon the whole, then, we come to the conclusion, that the doctrine of giving day to infant defendants, to show cause against the decree, after they become of age, has not been considered as forming a part of our chancery practice; and that it is, in many respects, repugnant to the provisions of our chancery codes, as prescribed by the legislatures in 1825, '35 and '45. See statutes regulating practice in chancery, *passim*.

In 1825, the legislature declared that there should be no such thing as allowing the parol to demur. The real estate then, which had descended to the infant heirs, charged with the debts of the ancestor, could be sold at law, notwithstanding the minority of the infants. No delay was occasioned by such infancy. Why, in chancery, should this day be given? The sales under decrees passed the title absolutely and unconditionally. Nay, the decrees affecting the real estate of defendants (all defendants) passed and vested the titles according to such decrees, without any conveyances from the defendants. These decrees became the foundation of titles to estates. Let it now be said, that all such decrees, where infants were defendants, and to whom no day is given in the decree, are void, because no such day is given, and a new series of contests, in our courts of justice, will spring into life. Sales and conveyances cannot be set aside after a lapse of a few years. Purchasers under them are secure; but decrees, which were sup-

posed to pass title and were made expressly to pass title as effectually as conveyances themselves, are to be declared erroneous and set aside twenty years after their rendition. What then becomes of the estates thus decreed? And why should a defendant, who is a minor, have this time given to him in a chancery suit, when it is obvious, that the judgment at common law, against an infant defendant, can be enforced by sale of real estate descended, charged with the ancestor's indebtedness, and such sale pass the title unconditionally?

The judgment below must be reversed, and the cause remanded, Judge Gamble concurring. Judge Scott not sitting in this cause.