STATE, EX REL. GEORGE WILLIAMSON, v. JUDGES OF THE COURT OF COMMON PLEAS OF THE COUNTY OF MIDDLESEX.

1. An appeal will lie to the Court of Common Pleas from a judgment rendered in a court for the trial of small causes, in an action of debt *qui tam*, to recover a penalty under the game act, although the justice's court has not jurisdiction over these actions.
2. Where what is, in form and color, a judgment is entered in a justice's court, in an action where the justice has not jurisdiction, the judgment is reviewable either by an appeal to the Court of Common Pleas or by a writ of *certiorari*.

This is upon a rule to show cause why a writ of *mandamus* should not be allowed to be directed to the respondents, requiring them to reinstate an appeal in their court. The rule is argued here upon a state of the case, of which the following are the material parts:

On November 22d, 1878, Charles L. Stout, a justice of the peace of Middlesex county, issued the following writ:

State of New Jersey, Middlesex county, *ss.*—The State of New Jersey to any constable of said county, greeting: Take the body of George Williamson, so that you may have him, forthwith, before the subscriber, one of the justices of the peace of the county of Middlesex, at my office, in the township of South Brunswick, in the county aforesaid, to answer unto Richard M. Johnson, in a plea of debt; demand, one hundred dollars.

Given under my hand and seal, this twenty-second day of November, A. D. 1878.

CHARLES L. STOUT,
*Justice of the Peace.*

Upon this writ was the following endorsement:

Richard M. Johnson, *qui tam*, plaintiff, *v.* George Williamson. In debt. Demand, $100.

Williamson v. Middlesex Common Pleas.

For penalty under the sixth section of an act entitled "An act to amend and consolidate the several acts relative to game and game fish," approved March 27th, 1874, and supplements thereto.

The following is a transcript of the justice:

Richard M. Johnson, *qui tam*, plaintiff, *v.* George Williamson, defendant. In debt. Demand, $100.

1878. November 22d. For a penalty under the sixth section of an act entitled "An act to amend and consolidate the several acts relative to game and game fish," approved March 27th, 1874, and supplements thereto.

This action commenced November 22d, 1878. On that day I issued a warrant directed to any constable of the county of Middlesex, and gave the same to Edward L. Harris.

December 3d. The constable returned the warrant thus:

I return the within warrant with the defendant in custody.                    E. L. HARRIS,
December 3d, 1878.                    *Constable.*

The defendant, with William B. Williamson, entered into recognizance to appear on Saturday, December 14th, 1878, at two o'clock in the afternoon.

December 14th. The parties appeared for trial; the plaintiff represented by John F. Hageman, Esq. On the part of the plaintiff, Richard M. Johnson, William Cullom, and Jane Cullom, were sworn, and gave evidence. The defendant offered no evidence. After hearing the evidence and allegations of the parties, I reserved my decision until Saturday, December 21st, 1878, at two o'clock in the afternoon. The defendant, with Theodore Titus, entered into recognizance for his appearance.

December 21st. The parties appeared, and I gave judgment that the defendant has forfeited the penalty demanded, and that the said plaintiff recover of the defendant the sum

of $80 debt, one-half thereof for the benefit of the plaintiff,. and the remainder to be paid to the collector of the county of Middlesex, where the offence was committed, for the use of said county, with $3.48 costs, thus :

The relator thereupon paid to said justice all the necessary costs incurred, and filed his appeal bond, as in an action of debt. It was approved by the justice, and an appeal was granted by him.

On January 26th, 1880, the matter came on to be heard' before the Court of Common Pleas. A motion was made to dismiss, and the court dismissed the appeal for lack of jurisdiction, on the ground that it was not the court to which the appeal should be taken.

Argued at February Term, 1880, before Justices WOODHULL and REED.

For the relators, *W. Strong.*

For the respondents, *E. T. Green.*

The opinion of the court was delivered by

REED, J.   The sixth section of the act mentioned in the endorsement upon the warrant in this case, provides that no person shall kill or have in possession any woodcock between certain dates, under a penalty of $50 for each bird.

The method which, in the game act, was originally provided for the enforcement of this and the other sections of that act, was so vague and uncertain that it was impossible to put the law in operation against violators of that statute.   To remedy this, an act was passed in 1877, (*Rev., p.* 1340,) in which a method of procedure was provided which should apply to each section of the act.

It enacts that a justice of the peace may try and punish all persons for violating the provisions of the act.   It provides that any party to a proceeding under this act may have his appeal,.

within twenty days after trial, to the Court of Quarter Ses-
sions of the county.

Nowhere is there a provision for an action of debt for the
penalty, and the explicit direction as to the method in which
the act shall be enforced, excludes the use of such action. It
is clear that an action for the recovery of a penalty provided
for by this statute, can never be successfully prosecuted in the
court for the trial of small causes, or any other court.

The proceeding under the act is analogous to that under
the English game acts, of which the justice takes cognizance
by virtue of his position as a magistrate. *Paley on Convic-
tions* 12, 13.

If the proceeding before the justice, in this case, was by
color of the act of 1877, it, although it might be defective,
would be appealable only to the Quarter Sessions of Middle-
sex county, and the Court of Common Pleas were right in
dismissing the appeal.

If, however, the proceeding was clearly not under that act,
but was intended as an action in the court for the trial of
small causes, it, although defective, would be appealable to
the Common Pleas. I think it is obvious, from a glance at
the papers, that the justice of the peace had no knowledge of
the proceeding under the act of 1877.

I think it is equally apparent that he supposed the correct
proceeding to be an action *qui tam* in debt, for a penalty. The
writ he issued is a copy in form of the warrant in *Nixon's
Forms* (3d ed.) 222. It is the original process in an action in
the court for the trial of small causes.

The justice endorsed upon the writ the title of the act under
which the penalty was sued. Such endorsement is essential
only in actions at law. *Rev., p.* 888, § 254.

It is unnecessary in a proceeding by information, as pro-
vided by the act of 1877. *Johnson* v. *Barclay*, 1 *Harr.* 1.

Judgment was entered as found in *Nixon's Forms* 270. It
was a regular judgment in an action *qui tam*. There is no
question as to the appealable character of this class of actions.
There can therefore be no doubt as to the intended character

of this proceeding.    It was obviously defective, but it was an
action brought in a justice's court, and was not an informa-
tion under the act of 1877.

But it is said that if this be admitted, yet the action was
one not within the jurisdiction of the court for the trial of
small causes.    It is said that the purpose of the endorsement
was to apprise the defendant of the ground upon which the
action was brought; that it disclosed to the defendant and
to the court that the ground was the recovery of a penalty for
the violation of a statute, and that the justice's court was
excluded from entertaining actions for that class of penalties.
From this, it is argued that the Court of Common Pleas
had no · jurisdiction to try the cause *de novo*, and their act of
dismissing the appeal was correct.

This view is founded upon the assumption that the juris-
diction of the appellate tribunal is dependent, in all respects,
upon the fact of the jurisdiction of the court below.    This
theory, upon first impression, has an appearance of soundness,
and finds countenance in the action of the courts in the follow-
ing cases:    *Mayor, &c.,* v. *Porter,* 18 *Md.* 284; *Osgood* v.
*Thurston,* 23 *Pick.* 110; *Burbage* v. *Squires,* 3 *Metc. (Ky.)*
77; *Ashuelot Bank* v. *Pearson,* 14 *Gray* 521.

In none of these cases is the question now mooted the sub-
ject of discussion, but the courts simply dismissed the appeal
upon the ground that if the court below had no jurisdiction,
the court above could have none.

I think it is obvious, however, that if this doctrine, as
applied in these cases, is correct, it strips the Court of Common
Pleas of much of its usefulness as an appellate court.

The action of the court, in the present case, left the judg-
ment below standing unreversed, and compelled the appellant
to pay the costs of taking an appeal from a judgment which
the court below admittedly had no right to enter.    *Strader* v.
*Board of Chosen Freeholders,* 3 *Green* 433.    Nor, as I shall
directly attempt to show, is the writ of *certiorari* an efficient
substitute for the remedy by appeal.

But I am convinced that the ground upon which such dismissals were put, will not support the action of the court.

I think the practice had its origin in the double signification of the term "appeal." The word is used to designate the act of lodging the action in the appellate court. It is also used to designate the action itself, when in the appellate court.

A dismissal of the appeal may mean the dismissal of the case made by the plaintiff upon the new trial, or it may mean a transmission of the record back to the lower court.

Inasmuch as the jurisdiction of the Court of Common Pleas is co-extensive with that of the justice's court, whenever a matter is not within the cognizance of the latter court, it cannot receive the consideration of the former. The course is to dismiss the appeal, i. e., the action being heard upon appeal. But this does not involve the right to bring the cause into the appellate court. The want of power in the appellate court to render a judgment upon the merits, does not defeat the right to adjudge as to any question arising upon an objection urged in abatement of the action or to the jurisdiction of the court.

Every court is called upon to determine the scope of its own jurisdiction. When such jurisdiction is questioned in the course of a legal proceeding, its determination is a question of law involved in the judgment. It, like every other question of law or fact, is the subject of review. The right to review this question alone, gives the right of appeal.

The appellate court must act upon it and decide it, and its decision should be entered of record in that court.

If the decision is against the jurisdiction of the courts—and if of one, of course of both courts—the action must be dismissed by force of that judgment, but the judgment should be entered, and the record retained in the appellate court.

This view of the right to take and retain the cause, although the judgment below was rendered in a proceeding without the jurisdiction of the lower court, is fortified by an appeal to the

section of the statute by which the right to an appeal is granted.

The privilege is conferred by Section 137 of the justices' court act, (*Rev. p.* 564,) in these words: "From any judgment which may be obtained before any justice of the peace, except such as shall be given by confession, either party may appeal to the Court of Common Pleas." The right of appeal, so far as it is limited by this section, is dependent upon the existence of a judgment below.

Nor need this judgment be correct in form. As Chief Justice Ewing remarked, in *Martin* v. *Thompson*, 5 *Halst.* 142: "The act of the legislature, the only support of the appeal, gives it when a judgment has been obtained; I do not mean a formal, regular, valid judgment. Nevertheless, there must be something in the nature of a judgment."

Now, it appears that the judgment from which the appeal in this case was taken, was, in form and color, entirely regular. By the terms of the preceding section, an appeal lies from it.

The only plausible ground for denial that an appeal lies from it is that, for the want of jurisdiction in the court which rendered it, it is no judgment. It is of course true that, for many purposes, it is a nullity.

While it yet stands unreversed, it is a *brutum fulmen*, which neither binds nor bars any one. Whether it is reviewable, brings us back to the question whether want of jurisdiction in the court is a matter which the appellate court can consider. That such a judgment is reviewable, is, I think, the overwhelming sentiment of the courts.

The review of jurisdictional questions and the reversal of decrees of the Court of Chancery for want of jurisdiction, is a not infrequent exercise of power by the court of last resort in this state. *Palys* v. *Jewett*, 5 *Stew.* 302. Yet it could be said that the order or decree by which the appellant is aggrieved, and the existence of which constitutes the ground of appeal, is no order or decree because void for want of jurisdiction in the court which makes it.

By the federal judiciary act, appeals are given from the Circuit and District Courts in case of final decrees. §§ 692, 693, 695, 696.

In the case of *United States* v. *Nourse*, 6 *Pet.* 470, 495, the United States Supreme Court said: "If it clearly appear that the Circuit Court had no jurisdiction in this case, still this court may take jurisdiction, so far as it regards the proceedings had before the Circuit Court; but these proceedings, being wholly unauthorized, must be annulled or reversed. This court, however, in such a case, can take no further jurisdiction of the cause."

In *Nelson* v. *Leland*, 22 *How.* 48, the counsel of the appellee moved to dismiss the appeal, upon ground of want of jurisdiction in the District Court. Upon this motion, Chief Justice Taney delivered the opinion of the court, as reported in the following words: "That the question of the jurisdiction in the lower court is a proper one for appeal to this court and for argument, when the case is regularly reached, and that this court has jurisdiction on such appeal." The motion was overruled.

By the New York statute, an appeal to the Court of Appeals is given from certain courts, in a judgment in an action commenced therein, or brought there from another court. *Pamph. L.* 1849, *p.* 616.

In *Kundolf* v. *Thalheimer*, 12 *N. Y.* 593, the Court of Errors reversed a judgment of a county court, rendered in an action for assault and battery, because the lower court had no jurisdiction in that class of actions.

In *McMahon* v. *Rauhr*, 47 *N. Y.* 67, a judgment of the general term of the Supreme Court was reversed, upon the ground that the general term acted without jurisdiction. The doctrine announced was, that where an inferior court has acted without jurisdiction, and has rendered judgment, the court with power to review its decisions may so far act upon the judgment as to reverse it, for that want of jurisdiction.

In *Commonwealth* v. *O'Neil*, 6 *Gray* 343, this rule was applied to the review of the sentence of a justice of the peace.

The Revised Statutes gave an appeal to the Court of Common Pleas. Says Metcalf, J.: "If the sentence be void, the defendant may undoubtedly omit to claim an appeal, and if committed to prison, be discharged on a writ of *habeas corpus*, or may successfully defend against a suit on his recognizance, if he has entered into one, for not abiding by the sentence. Still, he may appeal to the Court of Common Pleas, where he will be released or a legal sentence imposed, and is not obliged to incur the risk of acting on a mistaken opinion as to the nullity of his sentence. An appeal opens to him the whole case as to the law, the facts, and the judgment."

So, in *McKitrick* v. *Peter*, 5 *Dana* 586, the rule which I think is in accord with the considered cases, and with correct practice, was announced. It was an appeal from the judgment of a justice, and the appeal was dismissed because the court had no jurisdiction of the case. This determination was brought into the Court of Errors, which reversed it. The court said : " It seems to us, that instead of dismissing the appeal at the cost of the ·appellant, whereby the parties were remitted to the condition in which they were before the appeal was taken, the court should have dismissed or abated the suit, at the cost of the plaintiff, for want of jurisdiction to try it in that form. As the judgment of the justice was for such an amount as authorized the appeal to the Circuit Court, the parties stood in the same attitude before that court as they occupied before the justice. And, although the appeal was taken by the defendant, the plaintiff was actor, and had a right, and was bound to make out a case within the jurisdiction of the justice and of the Circuit Court, and conformable to the nature of the warrant."

The following are additional cases in support of the same rule : *Moore* v. *Wait,* 1 *Binn.* 219 ; *Petty* v. *Durall,* 4 *Greene* (*Iowa*) 120 ; *Thomas* v. *Winters,* 4 *Blackf.* (*Ind.*) 161 ; *Hearn* v. *Cutberth,* 10 *Texas* 216.

I conclude that this judgment was the subject of review by virtue of the one hundred and thirty-seventh section of the justices' act.

Nor have I overlooked the provisions contained in Section 95 of that act, which proscribes the use of the writ of *certiorari*, in all cases where the justice has jurisdiction, to remove any judgment from which an appeal lies.

This impliedly leaves the use of the writ in all cases where the justice has not jurisdiction. This section contains a legislative sanction of the view that an appeal could be taken from an extra-jurisdictional judgment, for if it were otherwise, then the words "that no judgment from which an appeal was given should be removed by *certiorari*," would, by their own force, leave such extra-jurisdictional judgments removable by that writ. The use of the words, "in all cases where the justice has jurisdiction," would have been superfluous.

The use of these words was intended to preserve the writ as a concurrent remedy with the right of appeal to review these judgments. Their use as concurrent remedies is no novelty in our practice. *Martin* v. *Thompson*, 5 *Halst.* 142; cases cited in *State, ex rel. Taylor*, v. *Cassedy*, 9 *Vroom* 437.

Previous to 1820, appeals were given from all judgments except such as were given upon verdict or the report of referees, or in the absence of, or by the confession of the defendant, or on a matter in dispute not exceeding $3. *Elm. Dig.* 283.

This right of appeal did not abrogate, by implication, the use of the writ of *certiorari* as a concurrent method of reviewing the same judgment.

By the act of 1820, the right of appeal was extended to judgments obtained upon a verdict of a jury or upon the report of referees, and by the same act, the use of the writ of *certiorari* was prohibited by express words, in all instances where an appeal was given. *Elm. Dig.*

By the act of 1833, the right of appeal was given where the trial took place in the presence of parties, although the judgment may have been rendered in their absence. *Elm. Dig.* 291.

In the revision of 1846, the exceptions are judgments by default, confession, or in the absence of the defendant, where

the trial did not take place in his presence, or where the matters in dispute shall not exceed $3.   *Nix. Dig.* 466.

It is perceived that, in all cases, no appeal was given from a judgment where the defendant was not present at the trial, so that, in those cases, a *certiorari* could be prosecuted.   Any jurisdictional defects resulting from failure to bring the defendant into court, could be remedied by *certiorari*.

By the revision of 1874, the right to take appeals was extended so as to include all judgments except those upon confession.   *Rev., p.* 564.

By force of the provision proscribing the use of *certiorari* whenever an appeal was given, this extension of the right of appeal cut off the use of the writ of *certiorari* even when the trial occurred while the defendant was absent, and such absence resulted from a failure to bring him into court by any citation.   To prevent this result, the clause in the Revision prohibiting the use of the writ to review all judgments where an appeal lies, was preceded by the words, " where the justice has jurisdiction."

Judgments, therefore, rendered without jurisdiction, are left unaffected by the prohibitory words of the statute.   They are in the same posture as judgments appealable previous to the act of 1820, and are therefore reviewable either by *certiorari* or upon appeal, or both.

The wisdom of this rule, as applied to judgments where jurisdiction over the person is absent, is obvious.   The statutory provisions regulating appeals require prompt action, or the right is lost.   Where the absence of jurisdiction is the result of a failure to warn the defendant, his ignorance of the existence of the judgment might prevent his taking his appeal within the statutory time.   He still has his writ.

In cases where jurisdiction over the subject matter is wanting, it is equally important that the right of appeal should exist.   The question whether jurisdiction does or does not exist, is often one of great nicety.   If *certiorari* should be the only remedy where jurisdiction is absent, and appeal the only remedy where jurisdiction is present, the determination

of the party in adopting the appropriate method of review, would be attended with great perplexity. If he took his writ, and it appeared that jurisdiction was present, his writ would be dismissed, with costs.

If he took his appeal, and it appeared that jurisdiction was absent, he would then be defeated.

Again, the question of jurisdiction may be one of several legal questions involved in the cause. Upon *certiorari*, the only question reviewable is that of jurisdiction. Upon appeal, if allowed, all questions can be reviewed, both of law and of fact.

My conclusion is, that the appeal in the present case was properly taken—that if the Court of Common Pleas found that there was not jurisdiction in the justice's court to render the judgment, it should have dismissed the action and entered a judgment of dismissal in the records of the appellate court. The dismissal of the appeal was illegal, and a writ of *mandamus* is allowed, directing the Court of Common Pleas to reinstate the appeal.

The relator should have his costs.