## JOSHUA A. SCOTT et al., Appellants, v. CHARLES T. ROYSTON et al.

### Division One, November 27, 1909.

1. **JURISDICTION: Selling Real Estate to Pay Debts.** The circuit court has no jurisdiction over a mere application for an order to sell the lands of a decedent to pay estate debts. Exclusive jurisdiction of such matters is conferred upon the probate court.

2. ———: ———: **Partition.** But if the suit is an equitable proceeding for the partition of decedent's lands among his heirs and widow, then the circuit court does have jurisdiction.

3. ———: ———: **Determined by Petition and Judgment.** Scott died the owner of 107 acres. His widow and adult and minor children, *ex parte*, filed a petition in the circuit court alleging that plaintiffs were his widow and heirs at law; that at the time of his death the land was his homestead, and that upon his death it passed to and vested in them; that there had been no administration, that the widow had paid off all debts amounting to $149.20. and that there were no other debts provable except a mortgage debt of $65.35, and a judgment for $229, which could be settled for $100; that 67½ acres of the land could be sold for $600; that the widow was unable to care for, manage and pay the taxes upon the whole of said homestead, and that the minors had no estate except their interest in the land; that Dunn, a plaintiff, had been appointed guardian of the minors; and prayed that the said 67½ acres be sold, and the proceeds be applied to paying the costs, the mortgage debt, the judgment debt, and in reimbursing the widow, and that the balance be turned over to the guardian of the minors. The judgment was in accordance with the prayer. The petition did not set out the interests of the widow and the several children in the estate, nor ask for the partition thereof among them as their interest might appear, and it and the judgment entirely ignored the interests of the adult children. *Held*, that the petition was not a proceeding for equitable partition, but a mere application to sell decedent's real estate to pay his debts, and the circuit court had no jurisdiction, and the sale by the sheriff was void, and the purchaser took no title. Besides, partition would not lie until the youngest child became of lawful age.

4. ———: ———: **Court of Equity.** The circuit court, as a court of equity, will not assume to adjust claims against the estate of a decedent, and order his land sold to pay his debts.

Its ancient chancery powers in that respect, if it ever possessed them, have been shorn by the Constitution and Statutes, which vest original jurisdiction exclusively in the probate court.

5. **VOID JUDGMENT: Ex parte: Collateral Attack as to Parties.** Where an attorney appears of record for adult parties in an *ex parte* proceeding, and the judgment is void upon its face because of a lack of jurisdiction in the court over the subject-matter, said judgment is not subject to collateral attack, although said adult parties were made plaintiffs without their consent or knowledge.

6. **MINORS: Plaintiffs: By General Guardian.** Under section 550, Revised Statutes 1899, which is the same as section 3469, Revised Statutes 1879, the guardian of minors legally appointed by the probate court, has ample authority to institute suit in the circuit court on behalf of said wards, in a partition or other suit, and they thereby are in court, without summons. But not so as to minor defendants; they must be served with process, and their guardian cannot enter their appearance. But such authority is not granted to the guardian by section 4380, Revised Statutes 1899, or any other section except section 550, Revised Statutes 1899. But neither a general guardian nor a guardian *ad litem* has authority to enter the appearance of a minor ward made a defendant in a suit, and they are not in court until served with process. [Hite v. Thompson, 18 Mo. 461; Shaw v. Gregoire, 41 Mo. 414, and Payne v. Masek, 114 Mo. l. c. 637, and other cases, considered and distinguished; and other sections of the statutes compared and discussed.]

7. **PARTITION: Pleadings and Practice.** The chapter on Partition of Real Estate is not complete in itself and is not independent of the Code of Civil Procedure. The pleadings and rules of pleading in ordinary civil actions govern the pleadings and rules of pleading in partition suits; and the procedure in partition suits is governed by the Code of Civil Procedure. Section 3479, Revised Statutes 1899, is not to be held to authorize the general guardian of a minor, made a defendant, to enter the appearance of his ward.

8. ———: ———: **As to Minors.** Besides, sections 3346 and 3347, Revised Statutes 1879, refer to proceedings in court, and not to the means by which minors are brought into court. The means by which they are brought into court are provided by article II of chapter 8, Revised Statutes 1899, entitled, "Proceedings By and Against Infants."

9. **VOID JUDGMENT: Estoppel: Refunding Money: Not Pleaded.** Where the lands of plaintiffs were sold under a judgment which was void because the court had no jurisdiction to render it,

they are not compelled, in the suit to recover the lands, to refund the money paid to the sheriff at the execution sale, unless the question was raised by the pleadings.

10. ———: ———: ———: **Not Received.** And where the money was not received by them, but was used by the sheriff to pay a mortgage and to satisfy a judgment against their father and the balance turned over to their mother, they are not estopped to maintain the suit for the homestead lands until they refund the money to defendant paid by him to the sheriff, whether the question was pleaded or not.

Appeal from Daviess Circuit Court.—*Hon. Frank Sheetz*, Special Judge.

REVERSED AND REMANDED.

*H. A. Kerr* for appellants.

(1) That a judgment may be valid and binding, the court rendering it must have jurisdiction of the persons of the parties involved. A judgment without jurisdiction is void. Wyth v. Lang, 54 Mo. App. 147; Caffery v. Mining Co., 95 Mo. App. 180. Judgment void unless party is properly brought into court and made a party to the suit. Trust Co. v. Railroad, 195 Mo. 669; Graton v. Land and L. Co., 189 Mo. 322; Turner v. Gregory, 151 Mo. 100; Vincent v. Means, 184 Mo. 327; Spars v. Land Co., 186 Mo. 656; Gillingham v. Brown, 187 Mo. 181; Evarts v. Lumber and Mining Co., 193 Mo. 433. (2) In a valid judgment the court must have jurisdiction of the subject-matter of the action. The circuit court has no jurisdiction over the sale of land of a deceased person to pay his debts. Marcy v. Stark, 116 Mo. 481; Camden v. Plain, 91 Mo. 129; French v. Stratton, 79 Mo. 560; Priest v. Spier, 96 Mo. 111; Dodson v. Scroggs, 47 Mo. 285. Equity has no jurisdiction where there is a plain, adequate and complete remedy at law. Matson v. Pearson, 121 Mo. App. 129. "Jurisdiction over all probate matters, pertaining to probate business, is taken out of the jurisdiction of the circuit courts and vested in the

probate courts." Strode v. Gilpin, 187 Mo. 391. (3) The appearance of an attorney for a party in Missouri is only prima-facie and can be rebutted and shown to be. unauthorized. Patterson v. Yancy, 97 Mo. App. 695; Marx v. Fore, 51 Mo. 70; Talbot v. Roe, 171 Mo. 134. (4) Nearly all courts of last resort, hold that judgment procured by fraud or collusion or by the unauthorized appearance of an attorney is void and may be so shown by evidence *dehors* the record. Harshey v. Blackmarr, 20 Iowa 161; Shelton v. Tiffin, 47 U. S. 163 (6 How. 163); Critchfield v. Porter, 3 Ohio 518; Reynolds v. Fleming, 30 Kan. 106; Masten v. Gray, 19 Kan. 458; Lawrence v. Jarvis, 32 Ill. 304; Arnott v. Webb, 1 Dill. 362; Price v. Ward, 1 Dutch. 225; Pennywit v. Foote, 27 Ohio St. 600; Dobbin v. Dutree, 39 Ga. 394; Wiley v. Pratt, 23 Ind. 628; Weatherby v. Weatherby, 20 Wis. 526; Ferguson v. Crawford, 70 N. Y. 253; Clark v. Little, 41 Iowa 497; Hoffman v. Hoffman, 46 N. Y. 30; Kerr v. Kerr, 41 N. Y. 272; Borden v. Fitch, 15 Johns. 121; Leith v. Leith, 39 N. H. 20; Pollard v. Wegener, 13 Wis. 569; Thompson v. Whitman, 18 Wall. 457; Knowls v. Gaslight Co., 19 Wall. 58; Rape v. Heaton, 9 Wis. 328; Aldrich v. Kinney, 4 Conn. 380; Starbuck v. Murry, 5 Wend. 148; Shumway v. Stillman, 6 Wend. 447; Hall v. Williams, 6 Pick. 232; Carleton v. Bickford, 13 Gray 191; Pollard v. Baldwin, 22 Ia. 328; Norman v. Cobb, 15 Tex. 500; Elliott v. Piersoll, 1 Pet. 328; Hickey v. Stewart, 3 How. 750; Williamson v. Berry, 8 How. 495; Webster v. Reid, 11 How. 437. (5) The sale of land of a deceased person to pay his debts has been confided by law to our probate courts and they have exclusive jurisdiction over the administration and settlement of estate of deceased persons. Matson v. Pearson, 121 Mo. App. 128; Marcy v. Stark, 116 Mo. 481; Camden v. Plain, 91 Mo. 129; Robbin v. Boulware, 190 Mo. 33; French v. Stratton, 79 Mo. 560; Priest v. Spier, 96 Mo. 111; Titterington v. Hooker, 58 Mo. 593; Pearce

v. Calhoun, 59 Mo. 274; Reed v. Robertson, 45 Mo. 580; Coner v. Ward, 47 Mo. 289; In re Powell Estate, 157 Mo. 151; Constitution, sec. 3, art. 16, and R. S. 1899, sec. 1753. Our statute, section 1674, divides circuit court jurisdiction into three sections and defines the same: 1st, original exclusive jurisdiction; 2d, original concurrent jurisdiction; 3d, appellate jurisdiction, and control over guardian and administrators is placed under the section of appellate jurisdiction, and even this is limited by our administration law. Miller v. Woodward, 8 Mo. 169; Overton v. McFarland, 15 Mo. 313; Powers v. Blakely, 16 Mo. 439. (6) On the death of a homesteader the homestead descends to and vests a life estate in the widow and an estate for years in the minor children or until each become of legal age. Boyles v. Cox, 153 Mo. 242; Creech v. Childers, 156 Mo. 342; In re Powell's Estate, 157 Mo. 155; Keene v. Wyatt, 160 Mo. 9; Banking Co. v. Brown, 165 Mo. 39; Huffschmidt v. Goss, 112 Mo. 649; Snodgrass v. Cooper, 203 Mo. 295; Hardy v. Atkinson, 136 Mo. App. 595; Stevens v. Stevens, 172 Mo. 24; Rhorer v. Brockhage, 86 Mo. 544; Brewington v. Brewington, 211 Mo. 49; Kochling v. Daniel, 82 Mo. 54. (7) An estate of a deceased person that descends to his widow and minor children cannot be partitioned until the younger child becomes of legal age. Huffschmidt v. Goss, 112 Mo. 649; Stevens v. Stevens, 172 Mo. 24; Rhorer v. Brockhage, 86 Mo. 544; Brewington v. Brewington, 211 Mo. 49; Kochling v. Daniel, 82 Mo. 54; Quail v. Lomas, 200 Mo. 687. (8) A guardian ad litem cannot appear for his minor ward unless the minor is personally served with summons and a judgment on such appearance is void. Smoot v. Judd, 184 Mo. 555; McMurtry v. Fairley, 194 Mo. 512; Gibson v. Chouteau's Heirs, 39 Mo. 536. (9) The heirs cannot be called upon in equity to restore what they never received. Bone v. Tyrrell, 113 Mo. 186. (10) Caveat

emptor applies to judicial sales. Stephens v. Ells, 65 Mo. 456; McVey v. McVey, 51 Mo. 46.

*John C. Leopard* for respondent.

(1) Guardian may appear for wards. R. S. 1899, sec. 4380; Hite v. Thompson, 18 Mo. 461; Smith v. Davis, 27 Mo. 298; Le Bourgeoise v. McNamara, 82 Mo. 189; Payne v. Masek, 114 Mo. 631. (2) Sale may be made by special commissioner. R. S. 1899, sec. 4425. (3) Partition in chancery may be had of an equitable estate. Reed v. Robertson, 45 Mo. 580. (4) Ex parte proceedings in partition may be had and infants may be made plaintiffs. Waugh v. Blumenthal, 28 Mo. 462; Larned v. Renshaw, 37 Mo. 458; Thornton v. Thornton, 27 Mo. 303. In a partition sale where widow is plaintiff and minor children defendants appear by guardian *ad litem,* and no claim of homestead is set up, passes free title to homestead. Rolf v. Timmereister, 15 Mo. App. 249. Every person having any interest in land sought to be partitioned, whether in possession or otherwise, shall be made a party to such petition. R. S. 1899, sec. 4376. The court did not err in striking out the testimony of Rebecca J. Sloan, Joshua A. Scott, and R. M. Barnett, for the reason that the decree rendered by the circuit court of Daviess county, imparts verity and cannot be attacked in a collateral proceeding like this. Livingston v. Allen, 83 Mo. App. 294; Myers v. McRay, 114 Mo. 377; Cochran v. Thomas, 131 Mo. 258; McDonald v. Frost, 99 Mo. 44; Yates v. Johnson, 87 Mo. 213.

WOODSON, J.—The plaintiffs brought this suit in the circuit court of Daviess county to determine title to the lands described in the petition. The court found for the defendants and entered judgment accordingly, from which plaintiffs duly appealed.

The facts are few and simple, and are substantially as follows:

One Andrew J. Scott in his lifetime owned and occupied the land in controversy as a homestead, which contained one hundred and seven acres, not exceeding in value the sum of $1500. There was a school fund mortgage for the sum of $65.35 existing against fifty acres of the homestead, bearing six per cent interest. A judgment for $229 had been rendered against Scott, which was claimed to be a lien upon all of said homestead.

Said Scott died September 9, 1881, intestate, in said county, leaving surviving him his widow, Mary Ann Scott, two adult children, Joshua A. Scott and Rebecca Jane Sloan, and the following minor children, namely, Robie, Ruth, John, Dora, Effie and Clarence Scott. These children of Andrew J. Scott are plaintiffs in this case, and claim title to the land in controversy as his heirs at law. The defendant, Charles T. Royston, claims title thereto through A. D. Scott, who purchased said land at the sale to be presently mentioned.

On February 3, 1885, John A. Dunn was by the probate court of Daviess county duly appointed guardian (but not curator) of the estates of Robie, Ruth, John, Dora, Effie and Clarence Scott, the minor children of said Andrew J. Scott.

On February 4, 1885, the widow, Mary Ann Scott, Joshua Scott and Rebecca J. Sloan, the adult children of Andrew J. Scott, and Isaac N. Goodvin, the owner of the judgment before mentioned, and all of said minor children, by their guardian, John A. Dunn, as *ex parte* plaintiffs, filed in the circuit court of said county a petition, of which the following is a copy (formal parts omitted):

"1st. Plaintiff states that the above named plaintiffs, Robie Scott, Ruth Scott, John Scott, Dora Scott, Effie Scott and Clarence Scott are the sole minor heirs at law, and Joshua Scott and Rebecca J. Sloan are the sole adult heirs at law, and Mary Ann Scott is

the widow, of Andrew J. Scott deceased, who died on the 9th day of September, 1881.

"2d. That at the time of the death of Andrew J. Scott he was seized, possessed and occupied as a homestead the following described real estate situate in Daviess county, Missouri, to-wit: The west half and the southeast quarter of the northeast fractional quarter of section nine, township sixty, of range twenty-seven, containing 105 acres, and not exceeding in value the sum of fifteen hundred dollars. That the said homestead at the death of the said Andrew J. Scott passed to and vested in said widow and said minor children as is provided by statute concerning homesteads.

"3d. That said Clarence is four years old, the said Effie is six years old, and the said Dora is about eight years old, and the said John is about ten years old, and the said Ruth is about fourteen years old, and the said Robie is about sixteen years old, and the said Mary Ann Scott is 45 years old.

"4th. That no administration has ever been sued out upon the estate of said Andrew J. Scott, but since his death the said widow, Mary Ann Scott, has paid off the debts of the said deceased, the sum of $149.20, and kept the taxes upon said real estate paid, and there are no other debts provable against said estate except as hereinafter stated.

"5th. That during the lifetime of the said Andrew J. Scott he borrowed of the county of Daviess the sum of $65.35 to secure which he conveyed by his mortgage deed to said county of Daviess the southeast quarter of the said northeast fractional quarter of section 9, subject to the condition that if the sum of money so borrowed with the interest thereon should be paid then said mortgage deed should be void, and the said sum of borrowed money has never been repaid.

"6th. That during the lifetime of him, the said Andrew J. Scott, to-wit, on the 16th day of October,

A. D. 1875, one Levi Cline recovered against him, the said Andrew J. Scott, in the circuit court of Daviess county, Missouri, a judgment for the sum of $229, and which bears interest at the rate of ten per cent per annum.

"7th. That said judgment has never been paid or satisfied, and the said Levi Cline duly and lawfully assigned said judgment to the plaintiff, Isaac N. Goodvin. That said west half of said northeast fractional quarter of said section numbered 9 is now of the reasonable value of $800.

"8th. That the judgment aforesaid now amounts with interest to the sum of $442 and will amount to the sum of $1,071 at the termination of the reasonable expectation of the life of said widow, Mary Ann Scott.

"9th. That said Isaac N. Goodvin, the said assignee as aforesaid of said judgment, has agreed to and with said widow, Mary Ann Scott, and the said guardian, John A. Dunn, to take and accept and receive the sum of $100 in full of the payment and satisfaction of said judgment, if paid immediately.

"10th. That said widow, Mary Ann Scott, is unable to profitably care for, manage and pay taxes upon the whole of said real estate, and that said minor heirs have no other estate than their interest in the homestead.

"11th. That said John A. Dunn was heretofore, on the 3d day of February, A. D. 1885, duly appointed guardian of the aforesaid minor children by the probate court of Daviess county, Missouri.

"12th. Wherefore, plaintiffs pray that the west half of the northeast fractional quarter of section nine may be sold and that this court appoint a trustee in behalf of these plaintiffs to sell and convey the same subject to the approval of this court, and that out of the proceeds of such sale the said trustee pay the said Isaac N. Goodvin the sum of $100; 2d, to pay the said

Mary Ann Scott the present value of her life estate in such proceeds, and the balance thereof to the guardian of such minor children for their use and benefit, and for such other orders and decrees in the premises as to the court may seem just and equitable.''

For convenience we have numbered the various paragraphs of the petition from one to twelve, both inclusive.

A trial of that cause was had in said court on February 10, 1885; and, after finding and reciting the facts to be substantially as they were stated in the petition, the court then made and entered of record the following judgment and decree:

''Whereupon it is considered, adjudged and decreed by the court that the sheriff of Daviess county be and is hereby appointed trustee for all the plaintiffs herein, and is ordered and directed to sell said real estate at either private or public sale as he shall deem best for a sum not less than $800, and out of the proceeds of such sale shall first pay the costs of this proceeding.

''Third, he shall pay to Daviess county the sum of $65.35 in discharge of the mortgage aforesaid.

''Second, he shall pay to the plaintiff, Isaac N. Goodvin, the sum of $100 in full satisfaction of said judgment.

''Fourth, he shall pay to said widow, Mary Ann Scott, her life estate in the balance of said proceeds, to be estimated at the rate of $10 one hundred ten one hundredths for every dollar of its income; to be reckoned at 6 per cent per annum.

''Fifth, he shall pay the balance of such proceeds over to the guardian of such minor children for their use and benefit.

''Sixth, that he report his proceedings hereunder at the term of this court which shall first ensue after such sale, and this cause is continued until then.''

223 Sup—37

On November 22, 1888, said court modified said decree in the manner and form as appears by the following order of record, viz:

"It is ordered that the continuance of this case be set aside and the sheriff, Gabe W. Cox, and John A. Dunn, administrator of Andrew J. Scott, deceased, representing to the court that the real estate asked to be sold in this case cannot be sold for the sum of $800, and that they are now able to sell the same for the sum of $600, and that $600 is a reasonable price therefor.

"It is ordered that the decree entered in said cause at the February term of this court, 1885, and recorded in Book 'M' at page 374 be so far modified as to authorize such sale for the sum of $600."

In pursuance to said decree said trustee sold at private sale the land in question to A. D. Scott for the sum of $600, and on November 23, 1888, the trustee executed a deed in due form conveying said land to said A. D. Scott.

The report of sale made by the trustee was in words and figures as follows, to-wit:

"Gallatin, November 23d, 1888.

"To the Honorable Charles H. S. Goodman, Judge of the Daviess Circuit Court.

"In obedience to an order of the above court for the sale of real estate in the case of Robie Scott, Ex parte, I, Gabe W. Cox, sheriff and trustee, make the following report, viz:

"Sold land to Alex D. Scott for $600.

"To amount paid to H. F. Harrah, assignee on judgment in the above court ........$  100.00
To amount paid N. B. Brown, County Treasurer, debts and interest due Daviess County ........... ........ ........   70.25
To J. W. Alexander, Atty. fee .............   20.00
To Circuit Court fee bill .................   10.85

| | |
|---|---:|
| To sheriff as trustee 2 per cent............. | 12.00 |
| To making deed ......................... | 2.50 |
| Total expenses ....................$ | 215.60 |
| Balance in my hand due estate ............ | 384.40 |
| | $ 600.00 |

"Very respectfully submitted, .
"GABE W. Cox,
"Sheriff and Trustee."

On November 14, 1891, A. D. Scott and wife by a general warranty deed conveyed the same land to Royston, the defendant.

I.   Counsel for appellants insist that the circuit court of Daviess county acquired no jurisdiction over the parties plaintiff, nor of the subject-matter of the suit instituted in that court on February 4, 1885, by Robie Scott, Mary A. Scott, Joshua Scott, Rebecca J. Sloan, Isaac N. Goodvin and John A. Dunn, guardian of Robie, Ruth, John, Dora, Effie and Clarence Scott, ex parte; and for that reason the decree of the court ordering the land in controversy to be sold to pay the debts of Andrew J. Scott, deceased, as well as the sale thereof made by the trustee, Cox, are absolutely null and void, and, consequently, the deed from said Cox to A. D. Scott conveyed no title or interest in or to said land whatever.   Upon the other hand, counsel for respondents contends that said suit was in the nature of an equitable proceeding, having for its object the partition of the lands owned by Andrew J. Scott at the time of his death; that said court has jurisdic-. tion of such matters; and that the institution of that suit conferred jurisdiction upon it over both the parties thereto and the subject-matter thereof.

If the insistence of counsel for appellants is true, that is, if the proceeding was simply an application to the circuit court of Daviess county for an order to

sell the land of Andrew J. Scott for the purpose of paying the debts of his estate, then that court, in my opinion, had no jurisdiction over the subject-matter of the suit, for the reason that the Constitution and laws of this State confer exclusive jurisdiction over such matters upon the probate courts of the respective counties of the State, as will be presently shown. But, upon the contrary, if that suit was an equitable proceeding to partition land, then the circuit court and not the probate court had jurisdiction of the same.

This last analysis of the respective contentions of counsel sharply presents the vital issue involved in this case.

We will proceed direct to that question, and determine what was the character of that suit. Was it an application to pay debts, or was it a partition proceeding? That question must be determined from the face of the petition filed in that suit.

The first paragraph of the petition filed therein states the death of Andrew J. Scott, and that the plaintiffs were his widow and heirs at law.

The second states that at the time of his death he owned and occupied a homestead, described therein; and that upon his death it passed to and vested in said widow and minor children.

The third stated the ages of the widow and children; also that there were no other debts except as thereinafter stated.

The fourth stated that there had been no administration upon his estate, and that the widow had paid off the debts of the estate to the extent of $149.20; also had paid the taxes due on the real estate.

The fifth stated that during his lifetime deceased had borrowed from the county $65.35 of the school funds, and had secured the same by giving a mortgage on a portion of his said homestead, describing it.

The sixth states that during the life of Andrew J. Scott, to-wit: October 16, 1875, one Levi Cline

recovered a judgment against him in the circuit court of said county for the sum of $229, and that it bore ten per cent interest.

The seventh stated that said judgment had never been paid or satisfied, and that Cline had assigned the same to Goodvin; also that the land sought to be sold was worth $800.

The eighth stated that said judgment then amounted to $442, and would amount to $1,071 at the termination of life expectancy of the widow.

The ninth stated that Goodvin had agreed with the widow and Dunn, the guardian of the minor children to accept $100 in full satisfaction of said judgment, if paid immediately.

The tenth stated that the widow was unable to care for, manage and pay the taxes upon the whole of said homestead, and that said minors had no estate except their interests in the homestead.

The eleventh stated that Dunn was duly appointed guardian of said minors by the probate court of said county in February, 1885.

And the twelfth prayed the court for an order to sell the west half of the northeast fractional quarter of section nine, and that of the proceeds of such sale the trustee pay to said Goodvin the sum of $100; 2d, pay said mortgage; and 3d, to pay said widow the present value of her life estate in such proceeds and the balance thereof to the guardian of such minor children.

It should be observed in this connection, that said petition did not attempt to set out the interests of the widow and the various children in the estate of said Andrew J. Scott, as the statute in part expressly requires, nor did it ask a partition of any of his real estate among them, as their interests might appear, but confined its prayer for the sale of only 67½ acres thereof for the purpose of paying the debts before mentioned.

Manifestly the pleader was not trying to draw a petition for the partition of real estate when he was writing the instrument under consideration. It contains some but not all of the allegations which were necessary to constitute a good petition in a partition proceeding. It does, however, contain, with much particularity, all of the allegations which were necessary to be made to constitute a valid petition for the sale of deceased's real estate for the payment of debts against his estate.

There is another fact in this case which is entitled to consideration in determining whether or not the suit mentioned was a suit for the partition of real estate. That is, the record shows that said entire real estate was the homestead of said Scott, and upon his death the law *instanter* vested the same in his widow and minor children; and partition will not lie until the youngest child becomes of age. [Hufschmidt v. Gross, 112 Mo. 649; Brewington v. Brewington, 211 Mo. 48; Quail v. Lomas, 200 Mo. 674; Rhorer v. Brockhage, 86 Mo. 544; Kochling v. Daniel, 82 Mo. 54.]

Under that condition of the law and facts it would be but natural to presume the pleader knew the law and would not ask the court to do that which the law forbade it doing.

But passing that point, if the design of the pleader in that case was to partition the real estate of Andrew J. Scott, it seems reasonable to suppose that he would have asked for the partition and sale of the entire estate and not simply asked for the sale of a portion of it, as was done in that case. Nor did the court ascertain and determine the interest of any of the children, either adults or minors, of said Scott in and to said land. It only ascertained the amount of the debts the estate owed, and the interest of the widow in that part of the land sold, and then ordered the land in controversy sold, and out of the proceeds

thereof the trustee was ordered to pay, first, the debts mentioned; second, the sum due the widow on account of her life estate therein; and, third, to pay the balance to the guardian for the use of the minor children, without attempting to ascertain and determine what their interests were in the same. And as regards the adult children, they and their interests in the land were wholly ignored by the prayer for relief and the decree of the court, although made parties to the suit.

Counsel for respondents, in his brief, frankly confesses that said proceeding was unusual in character; and if considered as a partition proceeding, then we must concur in that confession, and state that it was exceedingly unusual, in fact, unprecedented in American Jurisprudence. But if we consider it as counsel for appellants do, namely, an ordinary petition for the sale of real estate of a deceased person to pay debts of the estate, then there is nothing whatever unusual about it, except the fact that it was filed in the circuit court instead of the probate court; but even that is not without precedent in this country, for prior to the establishment of the probate court, and the giving unto them exclusive jurisdiction over all matters pertaining to probate business, the circuit courts, being courts of general and unlimited jurisdiction, had jurisdiction to administer estates and order the sale of real estate for the payment of debts; but since that time they have no such authority, as we will presently show.

Sections 143, 145 and 146, Revised Statutes 1879, which were the same as are sections 143, 145 and 146, Revised Statutes 1899, were in force and operation when said petition was filed in the circuit court. Those sections read as follows:

"Sec. 143. If any person die leaving land encumbered by mortgage or deed of trust, or any lien whatever, or owning any equity of redemption, or leaving mortgaged or pledged any personal property, and shall not have devised the same, or provided for the redemp-

tion thereof by will, the court shall have power, if, in its judgment, it will promote the interest of the estate, and not be prejudicial to creditors, to order the executor or administrator to redeem the same out of the personal assets of the estate, or to order the sale of other real estate, to redeem· such land or personal property so encumbered.

"Sec. 145. If any person, having given a deed of trust or mortgage with power of sale, shall die, no sale shall take place under such deed of trust or mortgage within nine months after the death of such person.

"Sec. 146. If any person die, and his personal estate shall be insufficient to pay his debts and legacies, his executor or administrator shall present a petition to the probate court, stating the facts, and praying for the sale of the real estate, or so much thereof as will pay the debts and legacies of such deceased person."

By reading said petition in the light of those sections, it will be seen that it conforms substantially to all of the requirements thereof; and it is perfectly apparent therefrom that the pleader was endeavoring to institute proceedings which would accomplish the results provided for in said sections, namely, to satisfy the school mortgage that existed against a portion of the land, and to pay the Goodvin judgment and other debts mentioned in said petition, and leave the remainder of the estate intact for the use of the widow and the minor children as their homestead. But learned counsel who drew the petition, knowing that no administration was being had upon the estate, must also have known that it would have been an useless act to have filed the petition in the probate court, where a hearing could not be had thereon because of the lack of an administration, must have concluded to file the cause in the circuit court, relying upon the ancient chancery powers of that court to assist him out of the dilemma he found himself in when he realized his

purpose could not be accomplished in the probate court without the aid of an administrator. At any rate, whatever motive may have actuated learned counsel to institute the proceeding in the circuit court, the fact remains indisputable that said proceeding had for its object the sale of the lands for the payment of debts and not the partition of real estate among the owners thereof.

II. Having reached the conclusion in the previous paragraph, that the proceeding instituted by Robie Scott et al., *ex parte,* in the circuit court of Daviess county, on February 4, 1885, was an application for the sale of real estate for the payment of debts, and not for the partition of the same among its owners, brings us to the consideration of the next proposition presented by counsel for appellants. That is, counsel contends that the circuit court of Daviess county had no jurisdiction whatever to hear or determine said application, but that said matter rested wholly within the jurisdiction of the probate court.

Coming to that proposition, sections 34 and 35 of article 6 of the Constitution of 1875 reads as follows:

"Sec. 34. *Probate Courts.*—The General Assembly shall establish in every county a probate court, which shall be a court of record, and consist of one judge, who shall be elected. Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians and the sale or leasing of lands by administrators, curators and guardians; and also jurisdiction over all matters relating to apprentices: Provided, That until the General Assembly shall provide by law for an uniform system of probate courts, the juridiction of probate courts

heretofore established shall remain as now provided by law.

"Sec. 35. *Probate Courts, Jurisdiction, Practice and Clerks.*—Probate courts shall be uniform in their organization, jurisdiction, duties and practice, except that a separate clerk may be provided for, or the judge may be required to act, *ex officio,* as his own clerk."

In compliance with that constitutional mandate, the General Assembly established a probate court in each and every county of the State and in the city of St. Louis. It also enacted chapter one of the Revised Statutes of 1879, consisting of fifteen articles, which is practically the same as chapters one of the Revised Statutes of 1889 and 1899, except as to the latter an additional article has been added relating to collateral inheritance tax.

The scheme and system of the administration and probate law there enacted are said, by those who are supposed to be judges of such matters, to be the most perfect and complete system in the world, leaving but few emergencies or contingencies where the old chancery powers of courts of general jurisdiction must be resorted to in order to do justice.

This court, in discussing this question, in the case of French v. Stratton, 79 Mo. l. c. 562, said: "As to the jurisdiction of the courts of equity in similar cases. In the Board of Public Works v. Columbia College, 17 Wall. 521, the Supreme Court of the United States holds that a court of equity will not exercise its jurisdiction to reach the property of a debtor, unless there exist some special circumstances requiring its interposition; and that this rule should be insisted on with rigor, whenever the property sought to be reached consists of assets of a deceased debtor, which have already been subjected to administration. In Titterington v. Hooker, 58 Mo. 593, it is held that under the administration laws of this State, upon failure of personal assets to pay debts, and after a final settlement of

the administration, a creditor cannot file a bill in equity against the heirs, to subject lands descended to them, to the payment of the debts of their ancestor. Full power and jurisdiction exists in our probate courts to afford a complete and final administration of estates of deceased persons. In those courts all parties interested can have ample opportunity for the assertion and protection of their rights; and if they seek other remedy, through the courts of chancery, very strong and satisfactory reasons must be shown therefor. [Pearce v. Calhoun, 59 Mo. 271.] These cases seem to settle the question in this State.''

One of the ablest and best considered cases I have been able to find discussing this question is that of Matson & May v. Pearson, 121 Mo. App. 120. On pages 128 to 130, Judge NORTONI, in speaking for the entire court, said:

''From the allegations and prayer of the bill, it is obvious that the pleader intended to and does seek equitable relief, hence the question arises whether or not a court of equity has jurisdiction to entertain the bill on the facts stated. It is determined and abundantly supported by both principle and authority that a court of equity will not assume jurisdiction of a claim against an estate of a deceased person until it has been made to appear that the probate court cannot afford the requisite relief. [2 Woerner's Amer. Law of Administration, pp. 815-816; 1 Ib., p. 356; Adams v. Adams, 22 Vt. 57; Harris v. Douglas, 64 Ill. 466-469; Blanchard v. Williamson, 70 Ill. 647-651; Miller v. Woodward, 8 Mo. 169; Pearce v. Calhoun, 59 Mo. 271; Titterington v. Hooker, 58 Mo. 593; In re Estate of Meeker, 45 Mo. App. 186; Meeker v. Straat, 38 Mo. App. 239; Overton v. McFarland, 15 Mo. 312.] The principle thus announced pervades the entire system of equity jurisprudence and is to the effect that equity interposes only to supply the deficiencies of the law and therefore if it appears that a party has an adequate

remedy at law, equity will point him to that court for relief and decline to assume jurisdiction. It is suggested, however, that even though the claims presented in the bill be demands against the estate within the meaning of the administration law, and as such congnizable in law courts, this equitable proceeding may be sustained upon the principle that inasmuch as under the English rule, courts of chancery assumed jurisdiction in nearly or about all manner of instances with respect to estates of deceased persons and the administration thereof, and that the doctrine is firmly established to the effect that whenever chancery once had and entertained jurisdiction, such jurisdiction continues and the subsequent grant of remedy at law will not oust the court of equity of its jurisdiction in the premises unless the equitable remedy is extinguished by direct and positive prohibitory provisions in the statute conferring such remedy at law.    There is no doubt but such is the rule which obtains with us and elsewhere. [Woodward v. Woodward, 148 Mo. 241; Stewart v. Caldwell, 54 Mo. 536; 1 Story's Eq. Juris. (13 Ed.), secs. 64 and 80.]   Now, it appears that in England, the subject of the settlement and disposition of estates of deceased persons, is or was a matter over which the ecclesiastical and chancery courts, to a very large extent, exercised what seemed to be a concurrent jurisdiction, and it is pointed out in the history of that jurisprudence that the courts of chancery so lightly esteemed the proceedings of the ecclesiastical courts with respect to matters of administration that they did not hesitate to take the subject from them, etc., but upon examination of the authorities, the reason for the exercise of this jurisdiction by the courts of chancery is discovered to be that the chancery courts asserted the prerogative on account of the inadequacy of the powers and infirmities of the ecclesiastical courts to meet the exigencies presented and to render complete

justice to all concerned.  So we ascertain the true ground upon which chancery courts assumed jurisdiction in these cases to be, either, that the remedy at law did not exist at all or was not 'full, adequate and complete.'  [Miller v. Woodward, 8 Mo. 169-173; Adams v. Adams, 22 Vt. 50-57; 1 Story's Eq. Juris. (13 Ed.), sec. 534.]  And indeed this was but the application of the same ancient principle of equity jurisprudence heretofore adverted to.  It has been pointedly decided, however, by our Supreme Court that the reason on which equity interposed in matters of administration in the old days does not obtain with us and that the principle suggested has no application in view of our statutes with respect to administration.  It is pointed out that they are so full and complete, abounding with apt and pertinent provisions to administer full, complete and adequate relief at law, and that their provisions are so ample with respect to matters of administration that they amount to an exclusion, in fact, of the chancery jurisdiction asserted, unless there be some fact or facts involved which render the case one where adequate relief at law cannot be had.  [Miller v. Woodward, 8 Mo. 169-174; Overton v. McFarland, 15 Mo. 312; Titterington v. Hooker, 58 Mo. 593; Pearce v. Calhoun, 59 Mo. 271; Adams v. Adams, 22 Vt. 50-57; 1 Woerner's Amer. Law of Administration, pp. 355-356.]''

In discussing the question of the circuit court's jurisdiction over matters pertaining to probate business, this court in the case of Strode v. Gilpin, 187 Mo. l. c. 391, said: ''The St. Louis City Circuit Court is a court of general original jurisdiction, and as such, has jurisdiction of all actions at law or in equity except such as have been taken out of that jurisdiction by positive law.  By that law, 'jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of un-

sound mind, settling the accounts of executors, administrators, curators and guardians and the sale or leasing of lands by administrators, curators and guardians' (Const., art. 6, sec. 34) are taken out of the general jurisdiction of circuit courts and vested in the probate courts. The judgments of the courts of each of these classes in matters within the limit of their respective jurisdictions are as conclusive as the judgments of the other.''

This identical question came before this court in the case of Priest v. Spier, 96 Mo. 111. There the plaintiff brought suit in the circuit court of the city of St. Louis to compel certain distributers of the estate of Isaac Walker to pay back a portion of the sums of money distributed to them for the purpose of paying subsequently allowed claims against the estate, and thereby exempt the real estate from sale, which otherwise would have been necessary to pay said claims. The facts of that case were quite lengthy, which are stated at some length in the petition, but as the object of the suit was as before stated, no good would be served by restating them here. The prayer of the petition was as follows: ''Plaintiff prayed that defendants be required to account to plaintiff for the several sums received by them from the administrators of said estate, and from the real estate received by them as aforesaid, and that such sums found by such accounting to be due from defendants to the estate of Isaac Walker be charged against the respective interests of defendants in the real estate set apart to them as aforesaid, and that plaintiff have execution therefor and for general relief.'' The defendants filed a demurrer to that petition, and among other grounds stated therefor was the following: ''That the administration law furnishes ample and full remedy for any deficiency of personal assets to pay debts where there is real estate in the hands of the heirs or devisees and within the jurisdic-

tion of the probate court." The court said: "This ground of demurrer is well taken. It is provided by section 146, Revised Statutes, that "If any person die and his personal estate shall be insufficient to pay his debts and legacies, his executor or administrator shall present a petition to the probate court stating the facts and praying for the sale of the real estate, or so much thereof as will pay the legacies and debts of such deceased person." Continuing, NORTON, C. J., in speaking for the full court, except RAY, J., who was absent, among other things said:

"The following sections prescribe the method to be pursued in effecting the sale of real estate for the purpose of paying debts.

"In the case of Titterington v. Hooker, 58 Mo. 597, 598, it is said: 'That the precise and simple, yet effective, provisions of our administration law, whereby the whole estate of a decedent, both real and personal, may be subjected to the payment of his debts, were designed to entirely supersede the more cumbrous machinery of the common law, and that the whole doctrine of equitable assets, marshaling assets in equity for the payment of debts and bills for discovery of assets and account, is without application here, save in so far as the principles underlying those proceedings may be invoked in illustration or explanation of analogous remedies afforded by our statute.'

"The petition shows on its face that the land of decedent is within the jurisdiction of the probate court, and if there are debts of the estate unpaid and no personal assets to pay with, resort must be had to the methods pointed out in the administration law to subject the real estate to sale for their payment."

To the same effect are the following cases: Camden v. Plain, 91 Mo. l. c. 129; Dodson v. Scroggs, 47 Mo. 285; Macey v. Stark, 116 Mo. 481.

Whatever may have been the chancery practice prior to the adoption of our present system of probate laws, since then we are clearly of the opinion that the circuit courts of the State have no jurisdiction whatever over any matter pertaining to probate business, except in rare instances, as before indicated. The jurisdiction over all such matters is given to the probate courts by the Constitution and laws of this State. Said courts are courts of record and they have exclusive original jurisdiction within their respective counties in all cases arising under the general laws of the State relating to the administration of estates and to all matters pertaining to probate business.

We are, therefore, of the opinion that the circuit court of Daviess county had no jurisdiction or authority over the subject-matter of the suit of Robie Scott et al., *ex parte,* filed therein on February 4th, 1885, praying for an order to sell the real estate of Andrew J. Scott, deceased, for the purpose of paying the debts of the estate. That authority rested exclusively with the probate court of that county.

III. We might rest this case here, and find for the appellants upon the sole ground that the circuit court had no jurisdiction of the subject-matter of that case, and that, consequently, the decree thereof ordering the sale, as well as the sale, and all conveyances of the land made in pursuance thereof, conveyed no right, title or interest in or to the real estate in controversy, were it not for the fact that counsel for respondents insists that since the appellants here were parties to the record there, and having received the benefit of the proceeds of the sale, they should be estopped from setting up any claim to the land without they should first refund the purchase price of the land.

In reply to that insistence counsel for appellants contend, first, that his clients were not parties to the

record in that case, and, second, that no such estoppel was pleaded.

We will dispose of these contentions in the order stated.

The record shows conclusively that as a matter of fact the adult children, of Andrew J. Scott, deceased, namely, Joshua A. Scott and Rebecca J. Sloan, did not authorize counsel to institute said suit of Robie Scott et al., *ex parte,* in the circuit court of Daviess county, on February 4, 1885, which resulted in the sale of the land in controversy to A. D. Scott, for the payment of debts, as before mentioned. Evidently, however, the widow of Andrew J. Scott and the mother of said children, the real instigator of said suit, thinking, as many good women do, that it was purely a family affair, and that she as such mother had a perfect right to act for all of her children, regardless of their ages, had the suit brought in her own name and in the names of all of her children without consulting any of them.

The record also shows, as before stated, that all of the children, excepting Joshua A. Scott and Rebecca J. Sloan, were minors, and that John A. Dunn, their guardian, united with the widow and the adult children in bringing and prosecuting said suit.

Based upon that state of the record, counsel for appellants insist that the circuit court acquired no jurisdiction over the persons of any of the parties to the suit except the widow, Mary A. Scott, who is not a party to this suit. The grounds for that contention are, first, that counsel could not enter the appearance of the adult children by simply joining them as parties plaintiff in the suit without their knowledge or consent; and, second, that the guardian of the minor children had no legal authority to enter their appearance unless they had been personally served with summons.

We will also consider these grounds of counsel's contention in the order above stated.

As to the first contention it is sufficient to state that this court has expressly held, that where an attorney appears of record in a cause for a party thereto, and the judgment rendered therein was void upon the face of the proceedings, it was not subject to collateral attack. [Cochran v. Thomas, 131 Mo. 258.] Continuing the court said in that case: "Whether the appearance was authorized or not was a question upon which the court had the power to pass, and in fact necessarily did pass in finding that the parties appeared. The finding is invulnerable collaterally. [Van Fleet, Coll. Attack, secs. 420 and 421 and cases cited.]"

My individual opinion is that the reason and weight of authority is to the contrary, as is shown by the following cases: Harshey v. Blackmarr, 20 Iowa 161; Shelton v. Tiffin, 47 U. S. 163 (6 How. 163); Critchfield v. Porter, 3 Ohio 519; Reynolds v. Fleming, 30 Kan. 106; Mastin v. Gray, 19 Kan. 458; Lawrence v. Jarvis, 32 Ill. 304; Arnott v. Webb, 1 Dill. 362; Price v. Ward, 1 Dutch. 225; Pennywit v. Foote, 27 Ohio St. 600; Dobbins v. Dupree, 39 Ga. 394; Wiley v. Pratt, 23 Ind. 628; Ferguson v. Crawford, 70 N. Y. 253; Clark v. Little, 41 Iowa 497; Hoffman v. Hoffman, 46 N. Y. 30-33; Kerr v. Kerr, 41 N. Y. 272; Borden v. Fitch, 15 Johns. 121; Leith v. Leith, 39 N. H. 20; Pollard v. Wegener, 13 Wis. 569-576; Thompson v. Whitman, 18 Wall. 457; Knowls v. Gaslight Co., 19 Wall. 58; Rape v. Heaton, 9 Wis. 328-332; Aldrich v. Kinney, 4 Conn. 380; Starbuck v. Murray, 5 Wend. 148-156; Shumway v. Stillman, 6 Wend. 447-452; Hall v. Williams, 6 Pick. 232-237; Carleton v. Bickford, 13 Gray 591; Pollard v. Baldwin, 22 Iowa 328; Norwood v. Cobb, 15 Texas 500; Elliott v. Piersol, 1 Pet. 328-340; Hickey v. Stewart, 3 How. 750; Williamson v. Berry, 8 How. 495-550; Webster v. Reid, 11 How. 437-460.

But in our opinion it would be unwise to over-turn the rule before announced, which has been the law of this State for many years.

As to the second contention a much more difficult proposition is presented for determination.

A party or parties to a suit may be either plaintiffs or defendants. The means by which the former are made parties are quite different from the means by which the latter are made parties thereto. The former voluntarily enter their appearance by instituting the suit as parties plaintiff, that is, by filing their petition in court, stating their cause of action, and praying for relief; or, subsequently thereto, by voluntarily entering their appearance, either with or without permission of court by some one or more of the numerous means by which such appearances are authorized by law. But the defendants to a suit are made parties thereto, first, by service of process upon them by some one of the modes provided for by law, or by voluntarily entering their appearances by accepting service, filing answer, or by some other mode authorized by law.

We will consider these two propositions in the order stated. As to the first, the Code of Civil Procedure makes ample provision for the institution of suits by persons who consider themselves aggrieved. The filing of that suit by parties *sui juris* of itself *instanter* enters their appearance and gives the court jurisdiction over the persons of all such. Persons *sui juris* may subsequently become parties plaintiff by conforming to some one of the numerous modes provided for by law, but in both instances their action is voluntary on their part. But all parties who are not *sui juris,* as minors and insane persons, as a rule, cannot of their own volition institute and prosecute suits for the protection of their rights or for the redress of wrongs done them. Such suits must be brought by their

guardian or curator or some other legally constituted representative, and process must be served upon them in order to bring them into court.

Since all of the parties we are now considering were minors when they instituted the suit before mentioned in the circuit court of Daviess county, it will be only necessary for us to determine whether or not they were properly before that court in that case.

We think they were for two reasons: first, because that suit was brought by their general guardian in a court of general jurisprudence, which was expressly authorized by article 2 of chapter 59, Revised Statutes 1879, which was then in force, entitled, ''Proceedings By and Against Infants.'' The first section thereof, which is section 3469, reads as follows:

''Sec. 3469. Suits by infants may be commenced and prosecuted, either: First, by the guardian or curator of such infant; or, second, by a next friend appointed for him in such suit.'' That section was ample and complete authority for Dunn, the guardian, to bring and prosecute that suit; and the mere fact that the said court had no jurisdiction of the subject-matter thereof did not prevent its jurisdiction from attaching to said minors when their petition was filed therein. But, notwithstanding this plain and ample authority for the guardian to bring that suit, learned counsel for neither the appellants nor respondents in the case at bar seem to think that the section just quoted had any application whatever to the suit before mentioned brought by said guardian in the name of said minors.

Counsel for respondents insists that section 3346, Revised Statutes 1879, the same as section 4380, Revised Statutes 1899, found in article 1 of chapter 56, entitled, ''Partition of Real Estate,'' authorizes a general guardian to enter the appearance of his minor ward as a defendant in a partition suit.

Clearly, that section did not apply if we are right

in our conclusion that said suit was not a proceeding to partition the real estate Andrew J. Scott died seized of, but was an application to sell the same for the purpose of paying debts. But in my opinion that section was inapplicable even though it be conceded that it was a suit in partition, as I will endeavor to show later on.

Counsel for appellants seem to have a misconception of the fact that Dunn was the general guardian. His contention is that Dunn was a guardian *ad litem,* and that such a guardian had no authority to enter the appearance of his minor wards in said suit. He states his position in the following language: "A guardian *ad litem* cannot appear for his minor ward unless the minor is personally served with summons, and a judgment on such appearance is void."

The confusion between counsel at to what law governed that case grows somewhat out of the misconception of the character of that case; and more especially out of the conflicting decisions of this court regarding the pleadings and procedure in suits for partition of real estate.

According to my view of the law relating to those matters, counsel for respondents might properly have conceded the above contention of appellants, and still that fact would not have affected the validity of the judgment under which his client claims title if it was otherwise valid, for the reason, before stated, the guardian, Mr. Dunn, who appeared for those minors was not a guardian *ad litem,* who could only be appointed by the circuit court, but was a general guardian, appointed by the probate court of Daviess county on February 3, 1885, the day before the suit was filed, who, as before shown, had ample authority to bring and prosecute any and all suits in behalf of his minor wards.

However, counsel for respondents did not make that concession, but he now and here repudiates any such idea, and insists that the minors had the right to appear by guardian under section 3346, Revised Statutes 1879, which is the same as section 4380, Revised Statutes 1899, and cites in support of his insistence the following cases: Hite v. Thompson, 18 Mo. 461; Smith v. Davis, 27 Mo. 298; LeBourgeoise v. McNamara, 82 Mo. 189; Payne v. Masek, 114 Mo. 631.

If counsel for respondents, as before stated, had relied upon section 550, Revised Statutes 1899, being the same as section 3469, Revised Statutes 1879, instead of section 4380, Revised Statutes 1899, he would have refuted appellants' contention in every particular, for the reason that said section in express terms authorizes infants to commence and prosecute suits by their general guardian or by a next friend; but, like many others, he relies upon the wrong section of the statute to furnish the authority for a general guardian to commence suits for minors. Said section 4380 only applies to procedure after the minor has been duly served and brought into court, as we will try to show.

The Hite-Thompson case, supra, was an ejectment suit, brought by Hite to recover the possession of a certain lot in Palmyra. The plaintiff Harriet Jane Hite, claimed title under Harrison Marders, a tenant in common with Abernathy. The plaintiff, who married Hite, was the daughter and sole surviving heir of Marders. The defendant claimed title under a partition sale made in 1834, begun by Abernathy against the plaintiff et al. "At the trial the defendants offered in evidence the record of the proceedings in the partition suit, to the admission of which the plaintiffs excepted. The record showed the following proceedings: A petition was filed by Abernathy, December 30, 1833, praying for the appointment of commissioners to make partition. The petitioner stated that he was the legal

guardian of Harriet Jane and James A. Marders, who were minors, but being interested, he prayed the court to appoint a guardian *ad litem* to represent them as to the matters in the petition. On the 19th of February, 1834, the court made an order appointing a guardian *ad litem* for the defendants. On the 26th of February, the guardian *ad litem* filed his answer confessing the petition. On the same day, the court made an order appointing commissioners to make partition. On the 20th of June, the commissioners reported that the lot could not be divided, and the court thereupon ordered that the same be sold 'by consent of parties, at private sale, for a sum not less than three hundred dollars.' On the 22d of October, 1834, the commissioners reported that they had sold the lot to Henry Wilcox for $350, and the court thereupon confirmed the sale. On the 23d of June, 1834, the commissioners executed a deed to Wilcox. The defendants showed a regular title from Wilcox. It did not appear that Harriet J. and James A. Marders had any notice of the proceedings in partition. It was admitted that they removed from Missouri in October, 1833, and took up their residence in Kentucky, where James A. shortly afterwards died without issue. Upon the refusal of the court to instruct the jury that the proceedings in partition did not divest the title of the heir, the plaintiffs submitted to a nonsuit.''

From this statement of the case it will be seen that Abernathy was not only a part owner of the land, for the partition of which he brought the suit, but he was also the general guardian of Harriet Jane Marders, who afterwards married Hite. So Abernathy individually and as general guardian of the Harriet Jane Marders et al., brought said partition suit, and after she had thereby been brought into court, the court appointed a guardian *ad litem* for her, on account of the conflicting individual interest of Abernathy with the interest of his ward. Under section 12, Revised Stat-

utes 1825, the filing of that petition by her general guardian entered her appearance in the case as a party plaintiff, regardless of what he styled her in the petition. While the record does not show, yet, presumably, she was styled one of the plaintiffs; but whether that was true or not, the facts stated in the petition show she was in fact a plaintiff and in court as such. No infant then, nor now, could or can bring a suit in any other way than by guardian or next friend filing his petition in court. But that is an entirely different proposition from the one presented where a stranger as plaintiff sues a minor as a defendant, and the guardian enters the minor's appearance in the suit.

This court in that case held that the circuit court had the authority to appoint the guardian *ad litem,* and that said guardian had the authority, without notice to the minor, to *enter his own appearance and file* answer for his ward.

The result reached in the Hite case was right, but in my opinion the means by which the court reached that result were erroneous. It based its ruling upon section 12, chapter 2, Revised Statutes 1825, which is practically the same as section 4380, Revised Statutes 1899. The court held that said section authorized the guardian *ad litem* to enter the appearance of the minor ward, overlooking the fact that she was already in court through the suit brought by her through her general guardian, who was also a party plaintiff in his individual capacity, and for precautionary means he prayed the court to appoint a guardian *ad litem* for the minor, because of the conflict between his individual interest and the interest of his ward. Under that view of the case she was in court, and the guardian *ad litem* properly answered for her; but if she was not in court, then, according to all of the authorities, the guardian *ad litem* had no authority to enter her appearance as a defendant in the case, except Shaw v. Gregoire, 35

Mo. 342, which was expressly overruled in this same case, on a second appeal, 41 Mo. 414.

And in the latter case the court took the same view of the Hite case that I have taken of it in the case at bar, namely, that she was already in court when the guardian *ad litem* was appointed, for there is no pretense that the general guardian, Abernathy, had entered her appearance in any other way than by simply filing the petition in court. He did not as guardian or otherwise enter her appearance as a defendant in that case. If she was not in court through and by virtue of her guardian filing that petition, then she was never in court at any time, because it is conceded by all and as all the authorities hold, a guardian *ad litem* has no authority to enter the appearance of his minor ward in a suit. Then the guardian *ad litem* had no right to enter her appearance as a defendant. Upon this point the court there said: "The decision in Shaw v. Gregoire, 35 Mo. 342, was based upon the supposition that the facts of the case were similar to those in Hite v. Thompson, and supposed that the court had obtained jurisdiction of the persons of these minor defendants as in that case, where it was held, under the same statutes, that the parties in question there were properly before the court. The precise point here presented does not appear to have been considered in that decision. In the opinion of Dryden, J., overruling the motion for a new hearing, it appears that this record of the former partition was not then before the court, and it was said, 'What the record may show we cannot tell.'

"In Hite v. Thompson, 18 Mo. 461, the case was very different from that which is now presented here. The plaintiff in the partition suit was the legally appointed guardian of the two minors, his wards, who were made defendants as tenants in common with him. Being himself the party plaintiff, he appeared in court in his capacity of guardian, and on his motion

the court appointed a guardian *ad litem* for them. The court considered him as having authority as the general guardian to act for them in the matter of the partition under the 53d section of the act, in a case where service of notice upon the guardian of a minor was all that the statute required. He was before the court acting as guardian for them as well as individually for himself; and the point decided was, that he could appear as their representative in his capacity of general guardian, without the service of notice either upon them or upon himself. The language of the opinion must be understood with reference to the question which was under consideration. We cannot take it as any authority for the position that the court would be authorized to appoint a guardian for a minor defendant who had neither been served with notice of any kind, nor was represented before the court by any lawfully appointed guardian whatever.''

The only fault I have to find with those views of the court relates to those remarks which say section 53 (Chap. 128, R. S. 1845), authorizes the general guardian to enter the minor's appearance by bringing the suit in her name. Instead of that section the court should have referred to section 1 of art. 2 of chap. 136, R. S. 1845. The latter section authorizes the guardian to so do, but the former does not.

Judge GANTT in the case of Payne v. Masek, 114 Mo. 1. c. 637, and 638, falls inadvertently into the same error that the court did in the Shaw-Gregoire case, by saying the general guardian could, under section 7139, Revised Statutes 1889, the same as 3346, Revised Statutes 1879, enter the appearance of a minor defendant in a partition suit. He should have said the general guardian had that authority by section 1997, Revised Statutes 1889, the same as section 3469, Revised Statutes 1879, which provides for bringing all kinds of suits by infants. The error suggested plainly

appears upon the face of what the learned judge there said. His language is as follows: "The first case in the decisions of this court involving this point is Hite v. Thompson, 18 Mo. 461. The facts were these. In 1833 one Abernathy filed his petition in court, he being the petitioner, and Harriet and James Marders, who were minors, were defendants, praying for the appointment of commissioners to make partition of land. Abernathy stated that he was the legal guardian of these two minors, but being an interested party, he prayed the court to appoint a guardian *ad litem* to represent them. This the court did and the guardian *ad litem* filed an answer for his wards, admitting the allegations contained in the petition. The court made an order appointing commissioners, who reported that the lot could not be divided, and thereupon the court ordered a sale, the lot was sold and the sale approved. Subsequently these proceedings were questioned, the point being whether or not these minors were properly or legally in court, and bound by the judgment of the court. This court in a clear and lucid opinion by Judge RYLAND, in which Judge SCOTT concurred, held that the general guardian had a right to enter their appearance; that the court obtained jurisdiction and wisely exercised it in appointing a guardian *ad litem*, on the prayer of the general guardian, out of abundant caution. That case also sustains the position that the proceeding must be tested by the partition act. Under the law as it then existed, service of notice upon the guardian of the minor was all that was required, but it will be observed the guardian himself was plaintiff in his own right. No notice was served upon him as guardian or upon his wards. The minors were residents of Kentucky at the time. That act contained a section which is substantially the same as section 7139 of the present revision."

In the first place it is observed that the learned judge said, "In 1833 one Abernathy filed his petition

in court, he being the petitioner, and Harriet and James Marders, who were minors, were defendants, praying for the appointment of commissioners to make partition of land," etc. And a little later he further stated, "This court in a clear and lucid opinion by Judge RYLAND, in which Judge SCOTT concurred, held that the general guardian had a right to enter their (Harriet and James Marders') appearance; that the court obtained jurisdiction and wisely exercised it in appointing a guardian *ad litem* on the prayer of the general guardian, out of abundant caution."

Obviously that was a slip of the tongue or pen, for the reason that in no case can the plaintiff enter the appearance of an adult defendant; much less that of a minor whose interest conflicts with his own, but he could, under section 1, article 2 of chapter 136, Revised Statutes 1845, have brought the partition suit for them as their general guardian, and could have joined them in that suit in his individual capacity. This whole confusion has grown out of the fact that the court has in some of the cases treated section 53 of chapter 128, Revised Statutes 1845, which is the same as section 3346, Revised Statutes 1879, section 7139, Revised Statutes 1889, and section 4380, Revised Statutes 1899, as applicable to the commencement of partition suits by infants. That is clearly a mistake. It refers to proceedings in court after the infant has been served with process and brought into court.

Section 1 of article II of chapter 136, Revised Statutes 1845, the same as section 3469, Revised Statutes 1879, section 1997, Revised Statutes 1889, and section 550, Revised Statutes 1899, governs in all cases where suits are commenced by infants, partition suits included, as we will try to show.

If we should take the view of the Hite case, that the minor ward was not in court when her guardian *ad litem* was appointed, and that he entered her appearance as a defendant by filing answer for her, then

that case would be in conflict with Shaw v. Gregoire, supra, and should be disapproved for the same reason that the latter case overruled the same case in 35 Mo. 342. Not only that, if that is the view to be taken of the Hite case, then it is in direct conflict with all of the decisions of this court.

In McMurtry v. Fairley, 194 Mo. l. c. 511, Judge Burgess, in discussing this question, in which Judge Gantt concurred, said: "While plaintiff was named as a defendant in said partition suit, he was then a minor, and was not served with process in accordance with the statute in force (G. S. 1865, p. 654), therefore not properly in court, and it is only after an infant defendant is brought into court in this way that a guardian *ad litem* can legally be appointed. [G. S. 1865, p. 652, par. 8; R. S. 1899, sec. 558.] The court, therefore, was without authority to appoint a guardian *ad litem* for plaintiff in that suit, and the acts of such guardian as to him were void and of no effect. [Payne v. Masek, 114 Mo. 637; Fischer v. Siekmann, 125 Mo. 165; Wright v. Hink, 193 Mo. 130.]" It will be noticed that he cites the very case in which Judge Gantt discussed that question.

There are scores of other cases of like import.

The case of Smith v. Davis, supra, is not in point, for the reason that there the minor was duly served, and it was contended that his guardian should have been served also.

Nor is case of LeBourgeoise v. McNamara, supra, in point, for there the question was, did the guardian *ad litem* have the power to make certain admissions during the trial of the cause that would be binding upon his ward. The court held that he could do so, but no question was raised as to entering the minor's appearance as a defendant in the suit.

(b) As regards ordinary suits against minor defendants, the decisions of this court seem to be uniform in holding that neither the general guardian nor a

guardian *ad litem* has the authority to enter the appearances of their minor wards as defendants in any such suit. [Gibson v. Chouteau, 39 Mo. 536; Railroad v. Campbell, 62 Mo. 585; Smoot v. Judd, 184 Mo. 508 l. c. 566; Wright v. Hink, 193 Mo. 130; See also secs. 558, 560, 575, and 585, R. S. 1899; 2 Wag. Stat., p. 1007, par. 7.]

(c)   But in cases brought for the partition of real estate, the decisions of this court bearing upon that question are conflicting. The later cases, however, hold that minors must be served in this class of cases with process in the same manner that adults are required to be served in ordinary actions; and that until such service is had upon them the court has no power to appoint for them a guardian *ad litem,* and that such guardian has no authority to enter the appearances of such minors in any such suit. [Fischer v. Siekmann, 125 Mo. 165 l. c. 176; Smith v. Davis, 27 Mo. 298; Shaw v. Gregoire, 41 Mo. 407; McMurtry v. Fairley, 194 Mo. 502, l. c. 511; Fulbright v. Cannefox, 30 Mo. 425; Hull v. Cavanaugh, 6 Mo. App. 147; Nagle v. Schilling, 14 Mo. App. 576; Campbell v. Gas Co., 84 Mo. l. c. 366; Railroad v. Campbell, 62 Mo. 585; Gibson v. Chouteau, 39 Mo. 536; Hendricks v. McLean, 18 Mo. 32.]

In Campbell v. Gas Co., supra, this court, in discussing this question, on page 366, said: ''The chancery suit in which Waddingham claims to have acquired an undivided half of the Wheeler title by decree of May 20, 1834, was originally brought against only two of Wheeler's children. Afterwards Lavinia, who is one of the plaintiffs here, was born, she being a posthumous child. An amended petition was filed making her a party to the suit; perhaps it should more properly be termed a supplemented bill under the practice of that day. To this bill her mother, *as general guardian,* made answer. The proceedings in the case fail to show that any summons, writ or subpoena was

ever issued or served upon her. In the absence of such service her guardian had no authority to appear for her or to represent her in the suit. Therefore, the record of this suit as to her was absolutely void, and the decree failed to convey to Waddingham any part of her title, which was one-third of the estate undivided.'' The other cases cited announce the same rule.

From this short resume of the decisions of this court bearing upon the question of service of process on minors, and the authority of their guardians, both general and special, to enter their appearances, we see they are in a state of irreconcilable conflict.

But the true intent and meaning of our practice act, it seems to me, is that minors in all actions, general, as well as in partition suits, must be served with process, and it excludes the idea that either their general guardian or their guardian *ad litem* has the authority to waive service for them and enter their appearances as defendants in any cause. Unquestionably that is true of all ordinary actions.

See authorities cited under clause (b) of this paragraph.

Not only that, but sections 558, 559 and 560, Revised Statutes 1899, which have remained practically unchanged for the last half century, read as follows:

''Sec. 558. After the commencement of a suit against an infant defendant, and the service of process upon him, the suit shall not be prosecuted any further until a guardian for such infant be appointed.

''Sec. 559. Such appointment shall be made by the court in which the suit is pending, or by the judge thereof in vacation, upon the written request of the infant defendant, if of the age of fourteen years or more, or, if such infant be under said age, on the written request of a relative or friend of the infant, and on the written consent of any competent person proposed as guardian, and such request and consent shall

be filed in the office of the clerk of the court before any answer by such infant shall be filed.

"Sec. 560. If such infant defendant neglect, for one day after the first day of the term at which he is bound to appear to the suit, to procure the appointment of a guardian to defend the suit, the court shall appoint some competent person to be guardian for such infant in the defense of such suit."

These sections are found in article II of chapter 8 of the Code of Civil Procedure, entitled, "Proceedings By and Against Infants."

This Article, of course, is intended to apply to all actions brought by or against infants, no exception is made. Sections 550 to 557, both inclusive, provide how suits shall be brought by infants, and those before quoted provide for service upon infant defendants, when sued.

Section 558 in express terms provides that "after the commencement of a suit against an infant defendant, and the service of process upon him," the suit *shall not be prosecuted any further until a guardian for him is appointed.*

By reading that section it is seen that it commands two things to be done when an infant is sued: first, that he shall be served with process, and, second, after service, all proceedings shall be staid until the court shall appoint him a guardian, in the manner pointed out in sections 559 and 560. [Wright v. Hink, 193 Mo. 130.] That being unquestionably true, then the guardian could not in the very nature of the case be appointed until after the minor had been served with process; and after being served, what possible sense could there be in holding that the guardian has the right and power to enter the minor's appearance when he had been already served and was then in court. If, upon the other hand, where service has not been had upon the minor, then the guardian cannot enter the appearance of the former, for the very good reason

the statutes in question do not authorize the court to appoint a guardian until after service is had upon the minor.

Unquestionably, the guardian here referred to is the guardian *ad litem,* for section 559 provides that "such appointment shall be made by the court in which the suit is pending," etc., which, of course, is the circuit court. That court has no power to appoint general guardians for minors; that power rests exclusively with the various probate courts of the State, as we have shown by paragraph two of this opinion.

Guardians and curators are creatures of the law and are statutory officers of the probate court; consequently, in the very nature of things, they have no inherent powers, as such, but only such powers as are prescribed by statute, having no authority to act for their wards except as conferred by statute; and especially is that true when they undertake to act outside of the court of which they are officers. That being unquestionably true, they have no legal right to bring or defend suits in behalf of the ward, except where they can point their finger to a statute authorizing them to do so; and even then, they must prosecute and defend in the manner prescribed by the statute.

Now as to the authority of the general guardian to waive service of process upon the minor and to enter the appearance of the latter.

Clearly, there is nothing in said article II of the Code of Civil Procedure which gives the general guardian any such authority. But, upon the other hand, sections 550 to 557 thereof, before mentioned, in express terms empower such guardians to bring suits for infants and in their names, but nowhere therein is such guardian authorized to enter the appearance of a minor defendant.

It is perfectly clear to our minds that there is no such statutory provision to be found in the practice

223 Sup—39

act which authorizes the guardian to enter the appearance of a minor defendant; and if it exists at all, it must be found under the heading of some special procedure.

The only cases I have been able to find which hold that the general guardian may enter the appearance of a minor defendant to a suit brought against him are the cases of Payne v. Masek, 114 Mo. 631, and Shaw v. Gregoire, 41 Mo. 407, but they are clearly out of line, as before shown.

Section 4380, before quoted, expressly authorized guardians and curators ... in behalf of their wards to do and perform any matter or thing respecting the division of lands which were necessary *as therein directed,* and that the same should be as binding on such ward as if the same had been done by such ward after his disabilities had been removed. But that section has no reference whatever to the commencement of suits, service of process, pleadings, etc., for the reason that the preceding section, 4379, controls in those matters, for, in express terms, it provides that "all pleadings and proceedings under this chapter [which is the chapter relating to partition of real estate] shall be had as in ordinary civil actions."

In the light of that section it seems to me that it would be illogical to hold section 4380 had anything to do with the commencement of suits and service of process, or with pleadings or the rules of pleading, for the obvious reason that if it was the design of the Legislature that the latter section should control in such matters, then the previous section would have no function whatever to perform, and would be a useless and senseless enactment. But, if upon the other hand, it was the intention of the Legislature that the section 4379 was to govern in matters of bringing suits, the service of process, and in pleadings and rules of pleading, then section 4380 would be limited thereby to the ordinary proceedings in court after the institution of

the suit, process served, pleadings settled and issues
joined. By such a construction we would give full
force and effect to both sections of the statute; but if
we adopt the construction that section 4380 is to control
in the matters mentioned, then, as before stated, sec-
tion 3479 could have no force or effect, and would be
a senseless piece of legislation. Such a construction
would do violence to the elementary canons of statu-
tory construction. It would violate that rule which
says an enactment should be so construed, if possible,
as to give full force and effect to each and every sec-
tion thereof; also the rule which provides that in the
construction of a statute that construction should be
adopted which harmonizes with reason and common
sense, and not be so interpreted as to lead to a foolish
or useless result. And I take it that the Legislature
intended what it said in said section 4379, namely, that
all *pleadings and proceedings under this chapter shall
be had as in ordinary civil actions,* and did not intend
to make the chapter on Partition of Real Estate com-
plete in itself and independent of the practice act, as
some of the cases cited hold. If that chapter is com-
plete within itself, then what section therein governs
the pleadings and rules of pleading in such actions?
None is there found bearing upon those matters. Be-
sides, the universal practice has been, as shown by
all of the adjudications of this court, that the plead-
ings and rules of pleading in ordinary civil actions
govern the pleadings and rules of pleadings in parti-
tion cases; and that being unquestionably true, then
how can it be logically contended that the *procedure*
in partition suits is not governed by the "Code of Civil
Procedure" in ordinary civil actions?

The same section (4379) which provides that the
pleadings, etc., in partition cases shall be governed
by the civil code, also, in that same sentence, says that
the *proceedings* therein shall be governed by the same
code. If the first is valid and binding upon the courts

as to pleadings, then, logically and as a necessary sequence, the *procedure therein mentioned* must also govern in such cases. There is absolutely no escape from that conclusion.

The foregoing views are fully supported by the language and reasoning of this court in the case of Shaw v. Gregoire, supra. On pages 413 and 414 the court said: "It seems to be supposed that the 54th section of the act gave the court power to appoint a guardian *ad litem* for minor defendants whether they or their guardians had been served with notice or not, and particular stress is laid upon the words 'before or after any proceeding by virtue thereof.' This section plainly refers to any proceeding by the court, and it must be construed and understood with reference to the preceding sections. The 5th section contemplates that the copy of the petition and the notice will be served on all parties before the case is presented to the court at all; and this 54th section, while providing that the court shall take no steps against a minor defendant until a guardian has been properly appointed, and making it lawful for the court to appoint a guardian for him, presupposes that the minor defendant has been brought before the court according to law for that purpose. But until he is brought into court by a service of the petition and a notice upon him or his guardian, or until he appears in person, or by his lawful guardian on whom such service has been had, or who has authority by law to represent him in such matters without notice, there is not the least warrant, either in the statute or in common law, or in equity, for any authority in the court to appoint a guardian for him, or to do any judicial act in the premises affecting his rights and estate. At law a guardian for a minor defendant could have been appointed only after the service of process upon him. [R. S. 1845, p. 807, sec. 8; Acts of 1849, p. 77, sec. 2.] It was the same in equity. [Hendricks v. McLean, 18 Mo. 37; 1 Dan. Ch.

Prac. (3 Ed.), 229; Day v. Kerr, 7 Mo. 426; Prac. in Ch. of 1845, p. 1837, art. 1.]''

And, again, I submit that there is not a particle of distinction made or drawn by the practice act governing ordinary civil actions, nor by the chapter governing the partition of real estate, between the power and authority of the general guardian and that of the guardian *ad litem* to enter the appearance of their minor wards as defendants, either in partition or in any other kind of civil action. In fact, no such distinction exists; nor does the law recognize any such difference. All of the powers and duties conferred upon the one are conferred and imposed upon the other.

And we might have added, as was said in the Shaw-Gregoire case, that sections 3346 and 3347, Revised Statutes 1879, plainly refer to *proceedings in court,* and not to the means by which minors are brought into court. They are brought into court by the means provided for by article II of chapter 8, Revised Statutes 1899, entitled, ''Proceedings by and Against Infants,'' which was also in full force and effect when this suit was brought.

This direct question, as before shown, has been before this court several times. In the case of Gibson v. Chouteau, 39 Mo. 536, and on page 565, the court said: ''The evidence showed that the equitable title to the located land had become vested in the heir of Christian Wilt in 1841, when the location was complete. The title which the defendants claim from the heir of Wilt through a decree in chancery, and the deed of the general guardian, made in pursuance thereof, to Joseph Hertzog, and through a deed of trust given by Hertzog, must be held to have been wholly ineffectual and void, for the reasons that the heir was not made a party to the proceedings, and could not appear and answer by his general guardian only.'' [See R. S. 1835, p. 294, sec. 5.]

Section 5, page 294, Revised Statutes 1835, upon which the case was based reads as follows:

"Whenever the court shall be satisfied that it will be for the advantage of minors to appoint a curator of the estate, different from the guardian of the person, it shall be lawful to make such separate appointments for minors under fourteen years of age, and to allow those over that age to make such separate choices; and all guardians and curators shall be allowed to prosecute and defend for the minors, in all matters committed to the care of such guardians and curators, respectively, without further admittance, in the several courts of this State."

The only shadow of authority outside of said article II of chapter 59, Revised Statutes 1879, which is the same as article II of chapter 8, Revised Statutes 1899, for the general guardian to enter the appearance of his minor ward to a suit of any kind was section 2579, Revised Statutes 1879, which reads as follows:

"It shall be the duty of all guardians and curators to represent their wards in all legal proceedings, to sue for, demand and receive all their dues, give discharges therefor, and compound the same upon such terms as may be authorized by the probate court; and all matters committed to their care, they shall prosecute and defend for their wards without further admittance, in the several courts of the State."

By comparing this section with section 5, page 294, Revised Statutes 1835, the one upon which the Gibson-Chouteau case was bottomed, it will be seen that they are substantially the same; and if the latter was insufficient authority for the general guardian to enter the appearance of the minor then neither was the former.

While both of these sections authorize the guardian to prosecute and defend suits for his wards, neither of them has any reference whatever to the commencement of suits against or the service of process

upon infant defendants. Those matters, as before stated, are governed entirely by said article II, chapter 59, Revised Statutes 1879, and same article of chapter 8, Revised Statutes 1899.

But in so far as respondent is concerned, it is immaterial which line of decisions must govern in such cases—the one which holds the general guardian can enter the appearance of his minor wards as defendants in a case, or the other, which holds he has no such authority—the result to him is the same, for the reason that the minors in the case referred to brought it as plaintiffs by their general guardian, John A. Dunn; and neither he nor anyone else entered their appearance as defendants in that case.

We, therefore, hold that the appellants here were properly before the circuit court of Daviess county in the case before mentioned.

IV. But notwithstanding that fact, can appellants be compelled to refund the purchase price of the land in controversy before they will be permitted to question the validity of the sale had under the void decree, before mentioned.

We think not, for two reasons: first, because that question was not raised by the pleadings, and, consequently, appellants had no opportunity to meet that issue; and, second, while it is true they were parties in a legal sense to the suit in which that void decree was rendered, yet the adult children had no actual notice of the suit, and the remaining ones were minors, and none of them according to this record received any actual benefit from the proceeds of the sale. The mother, if any one, received all the money that was paid out by the trustee, except the seventy dollars paid to the county, due on the school mortgage, and the one hundred dollars paid on the Goodvin judgment. The land sold constituted a part of the homestead, and was not subject to sale to satisfy the judgment. The trustee still retains $284 of the purchase money in his

hands, if he has not paid it to the mother of appellants, as the decree of the court ordered him to do.

So, viewing the case from any standpoint you may, none of the appellants received any benefit from the proceeds of the sale, without it might be said the $70 paid on the school mortgage released that lien upon the homestead. But be that as it may, no such question was presented by the pleadings, and for that reason there is no use in deciding the question.

The judgment is reversed and the cause remanded for a new trial. All concur.